COMMONWEALTH *vs.* WILLIAM F. DAVIS.

Suffolk.     November 26, 1894. — January 1, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Municipal Ordinance — Constitutional Law — Meaning of " Public Address."*

An ordinance of the city of Boston, providing that no person shall, except by permit from the mayor, "make any public address" in or upon any of the public grounds of the city, is constitutional, and the words "public address" apply to sermons delivered on the Common.

COMPLAINT to the Municipal Court of the city of Boston, charging that the defendant, on June 10, 1894, "did make a public address" upon certain public grounds of Boston called the "Common," without a permit from the mayor of the city, and contrary to the Revised Ordinances thereof. Section 66 of chapter 43 of the "Revised Ordinances of the City of Boston, 1892," is as follows: "No person shall, in or upon any of the public grounds, make any public address, discharge any cannon or firearm, expose for sale any goods, wares, or merchandise, erect or maintain any booth, stand, tent, or apparatus for purposes of public amusement or show, except in accordance with a permit from the mayor."

At the trial in the Superior Court, before *Fessenden*, J., the jury returned a verdict of guilty, and the defendant alleged

exceptions, the nature of which sufficiently appears in the opinion.

*J. F. Pickering,* (*J. W. Pickering* with him,) for the defendant.

*M. J. Sughrue,* Second Assistant District Attorney, for the Commonwealth.

HOLMES, J. The only question raised by these exceptions which was not decided in the former case of *Commonwealth* v. *Davis,* 140 Mass. 485, is one concerning the construction of the present ordinance. That such an ordinance is constitutional is implied by the former decision, and does not appear to us open to doubt. To say that it is unconstitutional means that, even if the Legislature has purported to authorize it, the attempt was vain. The argument to that effect involves the same kind of fallacy that was dealt with in *McAuliffe* v. *New Bedford,* 155 Mass. 216. It assumes that the ordinance is directed against free speech generally, (as in *Des Plaines* v. *Poyer,* 123 Ill. 348, the ordinance held void was directed against public picnics and open-air dances generally,) whereas in fact it is directed toward the modes in which Boston Common may be used. There is no evidence before us to show that the power of the Legislature over the Common is less than its power over any other park dedicated to the use of the public, or over public streets the legal title to which is in a city or town. *Lincoln* v. *Boston,* 148 Mass. 578, 580. As representative of the public, it may and does exercise control over the use which the public may make of such places, and it may, and does, delegate more or less of such control to the city or town immediately concerned. For the Legislature absolutely or conditionally to forbid public speaking in a highway or public park is no more an infringement of the rights of a member of the public than for the owner of a private house to forbid it in his house. When no proprietary right interferes, the Legislature may end the right of the public to enter upon the public place by putting an end to the dedication to public uses. So it may take the lesser step of limiting the public use to certain purposes. See Dillon, Mun. Corp. (4th ed.) §§ 393, 407, 651, 656, 666; *Brooklyn Park Commissioners* v. *Armstrong,* 45 N. Y. 234, 243, 244.

If the Legislature had power under the Constitution to pass a law in the form of the present ordinance, there is no doubt that

it could authorize the city of Boston to pass the ordinance, and it is settled by the former decision that it has done so. As matter of history we suppose there is no doubt that the town, and after it the city, has always regulated the use of the Common except so far as restrained by statute.* It is settled also that the prohibition in such an ordinance, which would be binding if absolute, is not made invalid by the fact that it may be removed in a particular case by a license from a city officer, or a less numerous body than the one which enacts the prohibition. *Commonwealth* v. *Ellis*, 158 Mass. 555, 557, and cases cited. It is argued that the ordinance really is directed especially against free preaching of the Gospel in public places, as certain Western ordinances seemingly general have been held to be directed against the Chinese. But we have no reason to believe, and do not believe, that this ordinance was passed for any other than its ostensible purpose, namely, as a proper regulation of the use of public grounds.

It follows that, as we said at the outset, the only question open is the construction of the present ordinance. We are of opinion that the words "No person shall . . . make any public address," in the Revised Ordinances of 1892, c. 43, § 66, have as broad a meaning as the words "No person shall . . . deliver a sermon, lecture, address, or discourse," in the Revised Ordinances of 1883, c. 37, § 11, under which *Commonwealth* v. *Davis*, 140 Mass. 485, was decided. See Rev. Ord. 1885, c. 42, § 11. Whether lecture, political discourse, or sermon, a speech on the Common addressed to all persons who choose to draw near and listen is a public address, and the omission of the superfluous words in the last revision is only a matter of style and the abridgment properly sought for in codification.

*Exceptions overruled.*

---

* In addition to St. 1854, c. 448, § 35, which appears in the opinion in *Commonwealth* v. *Davis*, 140 Mass. 485, the government in the present case called the attention of the court to § 39 of the same statute, which confers upon the city council the care and management of the public buildings and of all the property of the city.