COMMONWEALTH *vs.* LAWRENCE GILFEDDER
and others
(and five companion cases [1]).

Suffolk.    April 7, 1947. — June 2, 1947.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Constitutional Law,* Freedom of speech, Freedom of the press, Peaceable assembly, Public place. *Parks. Municipal Corporations,* By-laws and ordinances. *Boston.*

An ordinance of Boston and rules of its park commissioners wholly forbidding the making of any "oration or harangue" or "public address" or the distribution of "circulars" in the city's parks without a permit from designated public officials, and leaving the granting or withholding of such a permit to the uncontrolled discretion of the officials, were on their faces unconstitutional as violating the rights to freedom of speech, freedom of the press and peaceable assembly guaranteed by the First Amendment to the Federal Constitution.

Statement by QUA, J., of some forms of valid regulation of the exercise in public parks of the constitutional rights of free speech and the distribution of literature.

SIX COMPLAINTS, received and sworn to in the Municipal Court of the City of Boston on July 16, 1946.

Upon appeal to the Superior Court, the cases were heard without a jury by *Morley*, J., a District Court judge sitting under statutory authority.

*J. L. Saltonstall, Jr., & S. C. Rand,* for the defendants.

*J. F. McAuliffe,* Assistant District Attorney, for the Commonwealth.

QUA, J. The complaints in five of these cases charge that the defendants did "make an oration" on Boston

---

[1] The defendants in the companion cases are Marie Philips, Norman Tubiash, Francis Votano, Arthur W. Blomen, and Joseph F. Massida.

Common without a permit from the mayor. The complaint in the remaining case, that against the defendant Philips, charges that she did "distribute pamphlets" on Boston Common without a permit from the mayor. In the Superior Court each defendant was found guilty and fined $1. The defendants' exceptions bring the cases here.

Park commissioners, in general, have statutory authority to make rules for the use of parks within their jurisdictions. St. 1875, c. 185, § 3 (relating to Boston). G. L. (Ter. Ed.) c. 45, § 5. *Commonwealth* v. *Crowninshield*, 187 Mass. 221. In addition to these statutes, on the days mentioned in the complaints there were "in full force and effect," according to the record, §§ 3 and 6 of c. 22 of the Revised Ordinances of Boston, which provided respectively that the board of park commissioners should "supervise, and regulate the use of, all parks, public grounds, playgrounds, baths and beaches . . . ," and that the board, with the approval of the city council, might "establish from time to time regulations for the use and government of parks." According to the record, there were also "in full force and effect" in Boston §§ 2 and 4 of the General Rules of the Board of Park Commissioners, which provided respectively that no person should "preach, or pray aloud, or make any oration or harangue excepting on Franklin Field and on Boston Common when so authorized in a written permit of the Board of Park Commissioners or His Honor the Mayor," and that no person should, "except in a place designated by or as authorized in a rule, or regulation, or a written permit of the Board of Park Commissioners . . . sell, or distribute any goods, wares or circulars, or any other thing . . . ." At the same time, according to the record, there was "in full force and effect" another ordinance, § 81 of c. 39 of the Revised Ordinances, which provided in part that no person should, "in any of the public grounds, make a public address . . . except in accordance with a permit from the mayor." It seems difficult to reconcile § 2 of the General Rules of the Board of Park Commissioners with § 81 of c. 39 of the ordinances, since the former distinguishes Franklin Field and Boston Common for special

treatment and provides for a permit from the park commissioners as an alternative to that from the mayor required by the ordinance. However, the grounds of this decision render unnecessary any attempt to resolve the seeming inconsistency or to investigate the authority respectively of the city council and of the commissioners.

And in these cases nothing turns upon the peculiar origin and history of Boston Common. It is enough that for many generations past the Common has been a place of general public resort as if dedicated to general park purposes. *Steele* v. *Boston*, 128 Mass. 583. *Lincoln* v. *Boston*, 148 Mass. 578. *Commonwealth* v. *Davis*, 162 Mass. 510. *Prince* v. *Crocker*, 166 Mass. 347, 362. *Codman* v. *Crocker*, 203 Mass. 146, 149. *Higginson* v. *Treasurer & School House Commissioners of Boston*, 212 Mass. 583, 586–587. For the purposes of the present cases it may be treated as would be any other public park.

Although the complaints conclude "against . . . the form of the statute" as well as against the rules claimed to have been violated, we are aware of no statute forbidding the acts charged against the defendants, and the prosecutions appear to be based wholly upon the ordinances and the rules and regulations of the commissioners. It may be doubted whether the complaints charge any violation of the rules of the commissioners, since they do not negative a permit from the commissioners, which is an alternative to the permit from the mayor under § 2 of the rules and is the only permit required under § 4 of the rules. But it would seem that at least the defendants other than Philips are charged with a violation of § 81 of c. 39 of the ordinances, if "an oration" is "a public address," as we suppose it is. It is immaterial that the complaints do not specifically mention the ordinance. G. L. (Ter. Ed.) c. 277, §§ 33, 79. *Commonwealth* v. *Kimball*, 299 Mass. 353, 354–355.

It is possible that some of the questions suggested above might prove decisive of some or of all of these cases in favor of the defendants. But none of these issues has been raised or argued. At the trial all parties stipulated that all parts of

the ordinances and rules hereinbefore mentioned were "in full force and effect." The only questions argued before us were whether the prohibitory provisions with which we are here concerned, contained in § 81 of c. 39 of the ordinances and in the rules, were unconstitutional on their faces or were unconstitutionally applied in these cases. All of the challenged provisions stand or fall together. The issue of constitutionality has been fully argued. Even if we could manage to avoid deciding it now, it would certainly arise again in the near future, and additional expense would be incurred. In these circumstances it seems our duty in the interest both of the parties and of the public to deal with the fundamental issue which will prove decisive of all the cases.

In the view we take, little or nothing depends upon the details of the facts in these particular cases. It may be in order, however, to state some of the facts agreed at the trial. Certain of the defendants other than Philips on July 7, 1946, and the others on July 14, 1946, "made orations" on that portion of the Common known as MacArthur Mall. The "orations" on July 7 were made on behalf of the Socialist Labor Party of America, and those on July 14 on behalf of the Socialist Party of Massachusetts. The defendants were all members of one or the other of these parties. Three of them were duly nominated candidates for public office on the tickets of their respective parties. On July 14 the defendant Philips distributed pamphlets on MacArthur Mall on behalf of the Socialist Party of Massachusetts, of which she was a member. The "orations" and the distribution of pamphlets were made peaceably and did not obstruct traffic or cause any disturbance or commotion. Neither the "orations" nor the pamphlets contained any improper language or advocated the overthrow of the government by force or violence or contained any matter calculated to incite to riot or cause any disturbance or commotion whatever. They were devoted to a discussion of public issues. None of the defendants had permits either from the mayor or from the park commissioners.

In our opinion, the provision of § 81 of c. 39 of the ordi-

nances which forbids the making of public addresses "in any of the public grounds" without a permit from the mayor, the provision of § 2 of the General Rules of the Board of Park Commissioners which forbids the . making of "any oration or harangue" excepting on Franklin Field and Boston Common and then only when authorized by a permit of the park commissioners or of the mayor, and the provision of § 4 of the rules which forbids the distribution of circulars except in a place designated by, or as authorized in, a rule or regulation (there being no such rule or regulation [1]) or permit of the park commissioners are all on their faces in conflict with the rights of freedom of speech, of the press, and of assembly guaranteed by the First Amendment to the Constitution of the United States, made applicable to the States by § 1 of the Fourteenth Amendment. *De Jonge* v. *Oregon,* 299 U. S. 353, 364. *Schneider* v. *State,* 308 U. S. 147, 160.

A series of recent decisions by the Supreme Court of the United States has, as we read the cases, established the proposition that the exercise of these rights cannot be wholly precluded in public places such as streets and parks by sweeping general prohibitions and cannot be subjected to the requirement of permits, the granting of which is not governed by binding rules adequate to insure the exercise of the rights under reasonable conditions. Perhaps the most completely in point of these decisions are *Hague* v. *Committee for Industrial Organization,* 307 U. S. 496, *Schneider* v. *State,* 308 U. S. 147 (reversing *Commonwealth* v. *Nichols,* 301 Mass. 584), *Jamison* v. *Texas,* 318 U. S. 413, *Marsh* v. *Alabama,* 326 U. S. 501, and *Tucker* v. *Texas,* 326 U. S. 517. Pertinent also in some aspects are *Lovell* v. *Griffin,* 303 U. S. 444, *Thornhill* v. *Alabama,* 310 U. S. 88, *Carlson* v. *California,* 310 U. S. 106, *Cantwell* v. *Connecticut,* 310 U. S. 296, *Largent* v. *Texas,* 318 U. S. 418, *Murdock* v. *Pennsylvania,* 319 U. S. 105, *Martin* v. *Struthers,* 319 U. S. 141, and *Thomas* v. *Collins,* 323 U. S. 516. Some of these decisions relate to the

---

[1] There is no suggestion in the record that there exists any rule or regulation authorizing the distribution of circulars under reasonable conditions of time, place or circumstance. If there were such rule or regulation, § 4 would present a very different question.

distribution of printed matter in streets and ways, but it seems plain that in respect to general principles no distinction can be drawn between the right to distribute printed matter and the right of public speech or between the exercise of those rights in public streets and their exercise in public parks. The reasoning of the decisions is applicable to both rights and to public places in general. Mr. Justice Roberts in his opinion in *Hague* v. *Committee for Industrial Organization*, 307 U. S. 496, says at page 515, "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens."

The vice in § 81 of c. 39 of the ordinances and in §§ 2 and 4 of the rules of the commissioners lies in the universality of the provisions forbidding public speech and the distribution of printed matter. The exercise of these rights in parks and public grounds is wholly forbidden at all times and places and under all conditions without the obtaining of a permit, and there is no clear assurance that an applicant can obtain a permit which will enable him to exercise these rights even at the most innocuous times and places and in a manner in no way harmful to the public interests. The way is left open for arbitrary action. *Commonwealth* v. *Maletsky*, 203 Mass. 241, 246. The safety, comfort and convenience of the public are not made the test. The Supreme Court of the United States has itself summed up the result of its decisions, in so far at least as they relate to the distribution of political and religious literature, in these words, "Under our decision in *Lovell* v. *Griffin*, 303 U. S. 444, and others which have followed that case, neither a State nor a municipality can completely bar the distribution of literature containing religious or political ideas on its streets, sidewalks and public places or make the right to distribute dependent on a flat license tax or permit to be issued by an official who could deny it at will." *Marsh* v. *Alabama*, 326 U. S. 501, at

page 504. The tenor of the decisions indicates that the same rule applies to public speech.

All of the decisions of the Supreme Court of the United States recognize the right of regulation to secure the safety, comfort and convenience of the public, so long as regulation stops short of denial or material impairment of the constitutional right. See particularly *Cox* v. *New Hampshire,* 312 U. S. 569; *Chaplinsky* v. *New Hampshire,* 315 U. S. 568; and *Valentine* v. *Chrestensen,* 316 U. S. 52. Valid regulation could, we think, include reasonable restrictions to prevent rowdyism, the obstruction of ways (see *Commonwealth* v. *Surridge,* 265 Mass. 425), or injury to property, including gardens, plantings, and the like. Such restrictions, it would seem, might properly exclude public meetings from certain areas, or even in some circumstances from an entire park, especially if it is small and merely ornamental in character and could not be used without injury, at least if other suitable places remain reasonably available. Regulation might be employed to forbid too many meetings too close together at the same time. We apprehend that the rights of free speech, free press, and assembly do not prevent the preparation of portions of a public park for special uses such as the playing of games or even the reservation of certain areas for family picnics and the like, or perhaps merely for uninterrupted rest and recreation. All these are among the proper uses of a public park. It does not seem to us that there is any paramount right to invade such reserved areas for speech making or the distribution of literature. We cannot, of course, undertake to catalogue here all possible forms of valid regulation. We can do no more than point out the general direction in which we think regulation may proceed, subject always to the final determination of an authority that is higher than ours in this field. But even when all allowance is made for valid regulation, there must remain, we think, many places, times and conditions at and under which in the parks of Boston and on Boston Common there exists, according to the decisions of the Supreme Court of the United States, a constitutional right of peaceable public address and to distribute lawful literature unfettered by the

necessity of obtaining a permit, the granting of which rests in the undirected discretion of municipal officers.

Our conclusion that the portions of the ordinance and of the rules here challenged are unconstitutional on their faces is in accord with our own recent decision in *Commonwealth v. Pascone*, 308 Mass. 591, where we held invalid on its face an ordinance forbidding the display by a pedestrian on the street without a permit of a placard, show card, or sign. See also *Commonwealth v. Anderson*, 308 Mass. 370; *Commonwealth v. Prince*, 313 Mass. 223 (affirmed sub nomine *Prince v. Massachusetts*, 321 U. S. 158); and *Commonwealth v. Akmakjian*, 316 Mass. 97. All of the cases cited in this paragraph were decided after some or all of the decisions of the Supreme Court of the United States hereinbefore cited. This decision does not affect the validity of any prohibition contained in the ordinance or rules other than the provisions already specified relating to public speech and the distribution of literature.

The Commonwealth presses upon us the cases of *Commonwealth v. Davis*, 140 Mass. 485, and *Commonwealth v. Davis*, 162 Mass. 510 (affirmed sub nomine *Davis v. Massachusetts*, 167 U. S. 43), and asks us to follow these decisions, while the defendants ask us to overrule them. These cases also turned upon the validity of ordinances forbidding public addresses upon Boston Common without a permit. We confess to difficulty in reconciling the present decision with the decisions in the *Davis* cases. Nevertheless, we feel compelled to the result now reached by the broad sweep of principles set forth in great amplitude in more recent decisions of the Supreme Court of the United States. That court in *Hague v. Committee for Industrial Organization*, 307 U. S. 496, at page 515, while seemingly doubting *Davis v. Massachusetts*, 167 U. S, 43, nevertheless distinguishes that case on the ground, as we understand the opinion, that the ordinance in the *Davis* case was not directed solely at the exercise of the rights of speech and assembly, but was addressed as well to other activities that could constitutionally be prohibited. That may also be true in the present cases. Again, in *Jamison v. Texas*, 318 U. S. 413, 415–416,

*Davis* v. *Massachusetts* was mentioned but was neither followed nor expressly overruled. We are not sure that we fully comprehend the ground on which *Davis* v. *Massachusetts* has been distinguished by the Supreme Court of the United States in the later cases, but we do not feel called upon expressly to overrule either of the cases of *Commonwealth* v. *Davis* as long as *Davis* v. *Massachusetts* appears to stand.

From the fact that we rest this decision wholly upon the Federal Constitution and its construction by the Supreme Court of the United States no inference should be drawn that the Declaration of Rights of the Constitution of this Commonwealth is less capable of protecting the essentials of freedom of speech, of the press, and of assembly than is the Federal Constitution. See arts. 16 and 19. Nevertheless, it is true that this court has not always in times past drawn the lines in the details of these matters exactly where it seems to us the Supreme Court of the United States now draws them. In addition to the *Davis* cases already discussed, mention should be made in this connection of *Commonwealth* v. *McCafferty,* 145 Mass. 384, *Commonwealth* v. *Plaisted,* 148 Mass. 375, *Commonwealth* v. *Abrahams,* 156 Mass. 57, *Commonwealth* v. *Haffer,* 279 Mass. 73, *Commonwealth* v. *Kimball,* 299 Mass. 353, and *Commonwealth* v. *Nichols,* 301 Mass. 584 (reversed sub nomine *Schneider* v. *State,* 308 U. S. 147). Within the field now occupied by decisions of the Supreme Court of the United States it would be merely academic and futile for us to inquire in every instance whether in construing the Constitution of this Commonwealth we would go as far as that court has gone in construing the Constitution of the United States.

In each case the entry will be

*Exceptions sustained.*