MILWAUKEE COUNTY, Respondent, vs. CARTER, Appellant.

*November 10—December 5, 1950.*

For the appellant there was a brief by *Padway, Goldberg & Previant* of Milwaukee, and *Hayden C. Covington* of

Brooklyn, New York, and oral argument by *Mr. Covington* and by *Mr. Saul Cooper* of Milwaukee.

For the respondent there was a brief by *William J. McCauley*, district attorney, *Oliver L. O'Boyle*, corporation counsel, and *Robert P. Russell*, assistant corporation counsel, and oral argument by *Mr. Russell*.

FRITZ, C. J. Sec. 47.02 (6) of the ordinances of Milwaukee county provides:

"No service or demonstration by any organization, creed, or sect, excepting only nondenominational or interdenominational Easter sunrise services, shall be allowed within the limits of any park or parkway of Milwaukee county. This shall not be construed to forbid the offering of an invocation, prayer, or hymn in connection with church picnics or other similar gatherings."

Briefly stated, the material facts stipulated are: On May 12, 1949, an application in writing was made by the South Unit of Milwaukee Congregation of Jehovah's Witnesses through its presiding minister, for permission to hold a series of public meetings in South Shore park, a public park within the exclusive jurisdiction and control of the Milwaukee county park commission, which had passed rules in respect to the use of the park that conform to the Milwaukee county ordinances. By a written order mailed to said congregation the park commission denied the application because religious services were prohibited, and the commission had concluded that the holding of the series of public meetings constituted religious services in the park in violation of said sec. 47.02 (6) of the Milwaukee county ordinances. Regardless of the commission's ruling and without a permit, the Congregation of Jehovah's Witnesses, on July 31, 1949, assembled in the park for a meeting at a convenient place situated so that it in no way interfered with the ordinary use of the park for recreational purposes by other persons. The defendant, David

Carter, was assigned to address the assembly gathered in the park, and he began addressing them on the subject, "The Two Great Commandments of Life," and used a sound-amplifying system to reach the audience. The amplification of his voice did not annoy or disturb anyone. His talk was based upon and in relation to the "Two Great Commandments" stated in the Bible. His manner was not boisterous and his speech and tone of voice were suitable and appropriate, and his attitude was kindly. He did not excite anyone to violence or unlawful acts, and no one in the audience or in the park for recreation was annoyed or offended at anything he said or did in addressing the assembly in the park.

In passing upon the question as to the constitutionality of said county ordinance, the trial court apparently considered, as he stated, "specifically and particularly sec. 18 of art. I of the Wisconsin constitution, and running along with that of course the corollary constitutional guaranties embraced in secs. 3 and 4 of said art. I, specifically so far as the most pertinent thereof are concerned, as applying to the facts in this case."

Sec. 18, art. I, Wis. Const., provides:

"The right of every man to worship Almighty God according to the dictates of his own conscience shall never be infringed; nor shall any man be compelled to attend, erect, or support any place of worship, or to maintain any ministry, against his consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries."

The court questioned "whether or not" the First amendment of the United States constitution, "which is binding upon the state of Wisconsin by virtue of the Fourteenth amendment to the United States constitution, . . . creates a

license for particular sectarian organizations for the dissemination of religious beliefs in organized form to utilize tax-supported public property for those purposes." And the court stated that, in his view, "The constitutional provision most applicable here, so far as the state issue is concerned, art. I, sec. 18 of the Wisconsin constitution, which has been interpreted, . . . in *State ex rel. Weiss v. District Board* many years ago in 76 Wis. 177, that said constitutional provision in Wisconsin definitely prohibits the use of public property for sectarian organized religious purposes."

The trial court rightly concluded that in view of said provision in sec. 18, art. I, Wis. Const., and the decision in *State ex rel. Weiss v. District Board*, 76 Wis. 177, 44 N. W. 967, and consistently thereafter in many cases, no person can be compelled to support any place of worship, nor can any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies or religious or theological seminaries. Thus, it is well-established law in this state that neither tax-supported public-school property nor funds so raised for public-school purposes can be used for sectarian organized religious purposes. In these respects the decisions of this court are in accord with the decision in *Illinois ex rel. McCollum v. Board of Education,* 333 U. S. 203, 68 Sup. Ct. 461, 92 L. Ed. 649, holding unconstitutional the use of public-school time and the course of instruction given the children through the compulsory-education law to teach religious doctrines, creeds, and principles. Among other things, the supreme court stated (pp. 205, 209) that, "Appellant's petition for mandamus alleged that religious teachers, employed by private religious groups, were permitted to come weekly into the school buildings during the regular hours set apart for secular teaching, and then and there for a period of thirty minutes substitute their religious

teaching for the secular education provided under the compulsory-education law. . . . The foregoing facts, without reference to others that appear in the record, show the use of tax-supported property for religious instruction and the close co-operation between the school authorities and the religious council in promoting religious education. The operation of the state's compulsory-education system thus assists and is integrated with the program of religious instruction carried on by separate religious sects. Pupils compelled by law to go to school for secular education are released in part from their legal duty upon the condition that they attend the religious classes. This is beyond all question a utilization of the tax-established and tax-supported public-school system to aid religious groups to spread their faith." However, although under sec. 18, art. I, Wis. Const., and the decision of this court in the *Weiss Case, supra,* and other cases, and likewise the decision of the United States supreme court in the *McCollum Case, supra,* such use of tax-supported public-school property and public-school funds is prohibited, no such restriction is considered applicable under the recent decisions of the United States supreme court to the use of public parks or streets by the people in their constitutional right to peaceably assemble in the free and orderly exercise of their religion and the freedom of speech, and of the press, as provided in the First amendment to the United States constitution. In *Saia v. New York,* 334 U. S. 558, 68 Sup. Ct. 1148, 92 L. Ed. 1574, the defendant Saia was prosecuted for violating a penal ordinance which prohibited the use of sound-amplifying devices in public places except with permission of the chief of police. Defendant, as a minister of the Jehovah's Witnesses gave lectures at a fixed place in a public park on a designated Sunday. When a permit was refused he used his sound-amplification equipment without a permit. The trial court upheld the ordinance against appellant's contentions that it violated Saia's right of freedom of speech. That determination was

reversed on an appeal by the United States supreme court. Mr. Justice DOUGLAS stated, in an opinion concurred in by the majority of the justices (p. 559),—"We hold that sec. 3 of this ordinance is unconstitutional on its face, for it establishes a previous restraint on the right of free speech in violation of the First amendment which is protected by the Fourteenth amendment against state action. . . . The statute is not narrowly drawn to regulate the hours or places of use of loud speakers, or the volume or sound . . . to which they must be adjusted. . . . Unless we are to retreat from the firm positions we have taken in the past, we must give freedom of speech in this case the same preferred treatment that we gave freedom of religion in the *Cantwell Case* [*Cantwell v. Connecticut*, 310 U. S. 296], freedom of the press in the *Griffin Case* [*Lovell v. Griffin*, 303 U. S. 444], and freedom of speech and assembly in the *Hague Case* [*Hague v. C. I. O.* 307 U. S. 496]." To the same effect are the decisions in *Jamison v. Texas,* 318 U. S. 413, 63 Sup. Ct. 669, 87 L. Ed. 869; *Largent v. Texas,* 318 U. S. 418, 63 Sup. Ct. 667, 87 L. Ed. 873; *Murdock v. Pennsylvania,* 319 U. S. 105, 63 Sup. Ct. 870, 87 L. Ed. 1292; *Busey v. District of Columbia,* 319 U. S. 579, 63 Sup. Ct. 1277, 87 L. Ed. 1598; *Marsh v. Alabama,* 326 U. S. 501, 66 Sup. Ct. 276, 90 L. Ed. 265; *Hague v. C. I. O.* 307 U. S. 496, 59 Sup. Ct. 954, 83 L. Ed. 423; *Schneider v. State,* 308 U. S. 147, 60 Sup. Ct. 146, 84 L. Ed. 155, reversing *Milwaukee v. Snyder,* 230 Wis. 131, 283 N. W. 301.

When, in sec. 3, art. I, the Wisconsin constitution guarantees the right of free speech it does not except or restrict speech on the subject of religion and, if it should, such restriction would be void because in conflict with and subordinate to the First and Fourteenth amendments of the United States constitution which neither make nor recognize any such limitation. Speech on religious topics is just as free, and no freer, under the constitution as speech on other sub-

jects and on no subject is it free from reasonable regulation to insure public order and safety and to reconcile the exercise of this right with the simultaneous enjoyment of equally sacred rights by others. The Milwaukee county ordinance purports not to regulate but to prohibit speech in public parks on political as well as religious subjects. Sec. 47.02 (7) of the ordinance provides: "No sermon, discussion, harangue, or speech shall be delivered by any person for political purposes or in connection with the sale of any article or which shall constitute a public criticism or abuse of any religious organization or representative thereof." Government may, in the interests of public order, safety, and the equitable sharing of facilities, exercise reasonable control over when, where, and under what conditions public meetings may be held on public property; but to deny to the people all use of the people's property for the public discussion of specified subjects is an unconstitutional interference of rights expressly guaranteed by both state and federal constitutions. Relying entirely on the facts which this record presents, it appears that Milwaukee county's ordinance is void, as in conflict with both constitutions, and the conviction under it is likewise void and must be set aside.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the complaint.