### STATE *vs.* WILLIAM B. FOWLER.
#### AUGUST 10, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J.   This is a criminal complaint which charges the defendant with making a public address to a religious meeting in Slater Park, a public park in the city of Pawtucket, in violation of section 11 of chapter 149 of the ordinances of that city.   After trial and conviction in the district court the defendant appealed to the superior court and claimed a jury trial.

When the case was called for trial in the superior court and before a jury was impaneled defendant, by leave of court, moved to quash the complaint on the grounds that the ordinance abridged and denied the rights of free assembly, free speech, and free worship guaranteed by the first and fourteenth amendments to the constitution of the United States and by the constitution of this state.   The trial justice declined to rule on the motion because he deemed the constitutional questions thus raised to be of such doubt and importance that they should be certified to this court for our determination pursuant to general laws 1938, chapter 545, §6, as amended by public laws 1940, chap. 941, sec. 2.

Under that statute the superior court is authorized to certify only the questions raised and not the cause itself. *United States Trust Co.* v. *Tax Assessors of City of Newport,* 47 R. I. 420.   The trial justice accordingly entered a formal order certifying the following specific questions:

"Is Section 11 of Chapter 149 of the ordinances of the City of Pawtucket, approved April 17, 1916, on its face and as construed and applied unconstitutional because it abridges the rights of the defendant to Freedom of Speech, Freedom of Association, and Freedom of Worship, contrary to the First and Fourteenth Amendments to the United States Constitution.

"Is Section 11 of Chapter 149 of the ordinances of the City of Pawtucket, approved April 17, 1916, contrary

to the provisions of Article I of the Constitution of the State of Rhode Island, with particular reference to Sections 3, 10, and 21."

Since only those questions and not the case are before us we must pass upon the constitutionality of the ordinance without reference to the circumstances out of which the case arose and was originally heard in the district court.

On its face the ordinance, which is hereinafter set out in full in the appendix, prescribes in a series of sixteen sections certain conditions under which any person may lawfully avail himself of the privilege of using the parks belonging to and maintained by the city. One of such conditions is contained in section 11 which defendant is charged with violating. That section reads as follows:

"No person shall address any political or religious meeting in any public park; but this section shall not be construed to prohibit any political or religious club or society from visiting any public park in a body, provided that no public address shall be made under the auspices of such club or society in such park."

The prohibition therein is not directed at any particular religious group, but is general and applies without question to all such groups and to all political groups as well.

The ordinance as a whole represents an exercise of the power which the city council has over the management and control of municipal property. Apparently in the exercise of that power the city council decided that the city's parks would more certainly serve the purpose of their establishment as areas of rest and recreation if they were not allowed to become forums for either religious or political controversy. This ordinance is not a legislative act of recent origin nor is it specially directed at the activities of the sect which the defendant represents. Rather it is a municipal regulation of long standing as is evidenced by the date of its approval, April 17, 1916, and hence it antedates by many years the recent prominence of that sect in federal litigation.

We are satisfied that the ordinance was designed not to interfere with freedom of assembly, nor to fetter freedom of speech or prohibit religious worship, but solely to guard the city's parks from being used for activities that reasonably could lead to annoyance and disorder and to that extent defeat the ends for which the city had established the parks as public areas of rest and recreation. The prohibitions contained in the ordinance including section 11 are quite definitely directed to that end. Out of its experience in conducting the prudential affairs of the city, the city council evidently was convinced that public addresses to religious or political groups in the parks would not be consistent with the purpose for which the parks were being maintained at public expense. Viewed in that light the ordinance appears to be a reasonable police regulation, and as such the people of Pawtucket have long acquiesced in its validity. It is attacked here, for the first time as far as we are aware, thirty-five years after its approval.

The defendant claims that he has a constitutional right to speak in any public park. He concedes that the city may reasonably regulate that right but that it cannot wholly prohibit its exercise. In other words, he asserts not only the right of free speech but also the privilege of a free forum in which to exercise that right. And he contends that he is supported in such view by the highest judicial authority. He relies on a number of recent cases decided by the supreme court of the United States where various kinds of municipal ordinances or administrative practices were held violative of the rights guaranteed by the first amendment to the constitution of the United States and made applicable to the states by the fourteenth amendment. Many of those cases do not involve an ordinance which conditions the lawful use of a municipally owned park upon compliance with certain definite regulations that are not discriminatory. However, some of them do involve such an ordinance or the opinions refer to the right to use such a park. The most

important of those cases and the ones upon which defendant appears to rely most strongly are *Hague* v. *Committee for Industrial Organization,* 307 U. S. 496; *Schneider* v. *State,* 308 U. S. 147; *Jamison* v. *Texas,* 318 U. S. 413; *Saia* v. *New York,* 334 U. S. 558; *Niemotko* v. *Maryland,* 340 U. S. 268; *Kunz* v. *New York,* 340 U. S. 290.

The defendant in his brief has quoted in part from and appears to lay particular stress upon the language of Mr. Justice Roberts announcing the decision of the court in *Hague* v. *Committee for Industrial Organization, supra,* at page 515, as follows: "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens."

Apparently the learned justice was only speaking for himself and two of his associates. Moreover, we are at a loss to know what was intended by that declaration especially since it was made in essaying a distinction between the case then before the court and *Davis* v. *Massachusetts,* 167 U. S. 43, which upheld the conviction of Davis for preaching on Boston Common in violation of an ordinance like the one in the case at bar. Singularly enough that case was not overruled in the *Hague* case and as far as we are aware has not been overruled, although the court has had occasion to refer to it in several later cases.

In the circumstances *Hague* v. *Committee for Industrial Organization, supra,* can hardly be considered decisive of the case before us. Incidentally in the later case of *Saia* v. *New York,* 334 U. S. 558, which involved the use of a "loud speaker" in a public park, Mr. Justice Jackson dissented and made the following observation concerning the quotation from Mr. Justice Roberts' opinion in the *Hague* case: "The

case of *Hague* v. *C.I.O.*, 307 U. S. 496, cannot properly be quoted in this connection, for no opinion therein was adhered to by a majority of the Court. The quotation in the Court's opinion today had the support of only two Justices, with a possible third. The failure of six or seven Justices to subscribe to those views would seem to fatally impair the standing of that quotation as an authority." 334 U. S. 558, 568, Footnote 1. If notwithstanding such criticism, the previously-quoted language of Mr. Justice Roberts in the *Hague* case, *supra,* is to be deemed as binding authority impliedly overruling *Davis* v. *Massachusetts, supra,* a great service to state courts would be performed if the supreme court itself would make that overruling clear and definite so that courts would have no reason to be misled in the future. We cannot safely rely upon some other court's interpretation of the language and effect of that case. So long as the *Davis* case stands without being specifically overruled by the supreme court itself, it is difficult for us to say that an ordinance substantially the same as the one involved in the *Davis* case is nevertheless unconstitutional beyond a reasonable doubt.

The defendant, however, points to *Saia* v. *New York* and *Niemotko* v. *State of Maryland, supra,* decided since the *Hague* case, as clear instances where the supreme court has definitely included public parks, as well as highways, within the orbit of its decisions protecting the freedoms of the first amendment from local abridgment or denial. In each of those cases it is true that the locus of the forbidden act was a public park but there the similarity to the case at bar ends. In the *Niemotko* case there was no ordinance of general application involved but rather an act of arbitrary discrimination by an administrative official. Indeed at the very outset of its opinion in that case the court observed that there was no ordinance regulating the use of the park in question.

As far as the *Saia* case is concerned the ordinance there

prohibited the use of a "loud speaker" device which casts its sound directly upon streets and public places. A public park was only incidentally involved because the defendant set up his "loud speaker" in such a place. He was arrested for using a "loud speaker" in defiance of the ordinance, not for making a public address in the park. The ordinance in question apparently was not invoked by the city to prohibit public addresses to a religious meeting in the park. The court in a five-to-four decision held that the city could not ban the use of a loud speaker in the manner provided in that ordinance because such use was comprehended within the constitutional guarantee of freedom of speech under the first amendment. It was upon that question that the court split. We do not think that point of decision is relevant to the particular controversy in the case at bar. Moreover the authority of the *Saia* case would seem to be questionable in view of the decision in *Kovacs* v. *Cooper,* 336 U. S. 77.

In the *Kovacs* case the court upheld an ordinance which prohibited the use of "loud speakers" on the streets and public places of Trenton, New Jersey. Mr. Justice Frankfurter and Mr. Justice Jackson who had dissented in the *Saia* case concurred in the decision and commented adversely on the *Saia* decision. The former said it would be "to start with an unreality" to rest the *Kovacs* decision on that case, and the latter expressly said that *Kovacs* repudiated *Saia.* Three justices who had concurred in the *Saia* decision dissented in the *Kovacs* case and also stated that the decision repudiated the holding in the *Saia* case. Later in *Niemotko* v. *State of Maryland, supra,* Mr. Justice Frankfurter concurring in a separate opinion said: "In *Kovacs* v. *Cooper,* 336 U. S. 77, part of the Court construed the ordinance as allowing conviction for operation of any sound truck emitting 'loud and raucous' noises, and part construed the ordinance to ban all sound trucks. The limits of the decision of the Court upholding the ordinance are therefore not clear, but the result in any event does not leave the

*Saia* decision intact." And perhaps *Breard* v. *Alexandria,* 341 U. S. 622, is a further indication of a more restrained approach to the solution of conflicts over local limitations on those freedoms. One of the dissenting justices therein goes so far as to say that such decision overrules certain prior cases in which the court declared invalid certain municipal ordinances as violative of liberty of speech, press and religion. In any event explicit clarification would seem to be necessary if the trial courts are to be given a clear guide for deciding in those cases that legislative enactments are beyond reasonable doubt in conflict with the constitution of the United States.

We are of the opinion that the other cases cited by the defendant afford no stronger support to his contention than those above mentioned and, therefore, we need not discuss them here. Moreover we are convinced that the case at bar is clearly ruled by *Davis* v. *Massachusetts,* 167 U. S. 43. The justice of the district court expressly relied upon that case in finding the defendant guilty. Perhaps a brief discussion of its background should be made here because it is obviously a decision that the supreme court of the United States has been reluctant to disturb in spite of language in a number of more recent opinions which might seem to be inconsistent therewith. In our opinion it is a case more nearly on all fours with the one at bar than any of the cases relied upon by the defendant.

Davis contended that he had a constitutional right guaranteed by the fourteenth amendment to the constitution of the United States to preach the gospel on Boston Common notwithstanding an ordinance which expressly forbade the making of a public address upon any public grounds except by permission of the mayor. The supreme judicial court of Massachusetts in upholding his conviction unanimously held that the ordinance was constitutional. *Commonwealth* v. *Davis,* 162 Mass. 510. That court held that the constitutionality of the ordinance was not open to

doubt and that it was a fallacy to assume that it was "directed against free speech generally * * * whereas in fact it is directed toward the modes in which Boston Common may be used." It is interesting to note that this opinion was rendered by Mr. Justice Holmes.

In a concurring opinion in *Kovacs* v. *Cooper,* 336 U. S. 77, 95, Mr. Justice Frankfurter said: "The ideas now governing the constitutional protection of freedom of speech derive essentially from the opinions of Mr. Justice Holmes. * * * Accordingly, Mr. Justice Holmes was far more ready to find legislative invasion where free inquiry was involved than in the debatable area of economics." Few will deny the accuracy of this estimate of Mr. Justice Holmes' judicial disposition and his basic influence in promoting this branch of the law to its present state of development. Apparently, however, he was far from ready, despite his solicitude for these precious freedoms, to deprive a municipality of its power to control the use of its own property.

After Mr. Justice Holmes had been elevated to and had served on the federal supreme court for eight years he apparently continued to be of the opinion that state laws should not be hurriedly overthrown as violative of the bill of rights or the fourteenth amendment. Speaking for a unanimous court in *Noble State Bank* v. *Haskell,* 219 U. S. 104, 110, he said that "we must be cautious about pressing the broad words of the Fourteenth Amendment to a drily logical extreme. Many laws which it would be vain to ask the court to overthrow could be shown, easily enough, to transgress a scholastic interpretation of one or another of the great guarantees in the Bill of Rights. They more or less limit the liberty of the individual or they diminish property to a certain extent. We have few scientifically certain criteria of legislation, and as it often is difficult to mark the line where what is called the police power of the States is limited by the Constitution of the United

States, judges should be slow to read into the latter a *nolumus mutare* as against the law-making power."

When *Commonwealth* v. *Davis, supra,* was appealed by Davis to the supreme court of the United States he contended that the local law under which he was convicted was contrary to the fourteenth amendment to the constitution of the United States. There Mr. Justice White, speaking for a unanimous court, rejected such contention saying: "The Fourteenth Amendment to the Constitution of the United States does not destroy the power of the States to enact police regulations as to the subjects within their control * * * and does not have the effect of creating a particular and personal right in the citizen to use public property in defiance of the constitution and laws of the State." And he concluded with the following words, so apposite in our opinion to the case at bar: "The plaintiff in error cannot avail himself of the right granted by the State and yet obtain exemption from the lawful regulations to which this right on his part was subjected by law." Unless the *Davis* case is no longer the law the ordinance in question here is valid and binding upon the defendant.

Before concluding our consideration of this contention perhaps some reference should be made to defendant's argument that a religious address may be permitted in a public park without contravening the concept of separation of church and state as expounded in the recent case of *Illinois ex rel. McCollum* v. *Board of Education, Etc.,* 333 U. S. 203. Defendant has pressed this point at considerable length in his brief and in his oral argument. This appears to be an act of supererogation, as the state is not claiming that the ordinance is valid on the strength of the *McCollum* case, but frankly concedes that the parks may be used for certain religious purposes. We quote the following from page 19 of its brief: "There is nothing in this ordinance, which would prohibit religious services of any kind from being held in the public parks of the City. There is nothing

in this ordinance which prohibits or restricts any individual from offering prayer or singing hymns or conducting a religious ritual in the public parks. It is only an address on such an occasion that is prohibited by this ordinance." We are therefore not called upon to decide whether the constitutional doctrine of the *McCollum* case which denies the use of a public school for a period of religious instruction nevertheless permits the use of public parks for religious services.

Defendant has also contended that section 11 violates the rights guaranteed by sections 3, 10 and 21 of article I of the constitution of this state. Although defendant did not point out those sections specifically in his motion to quash, as he should have done, the trial justice in his order of certification assumes that they are the sections relied upon. We have no hesitancy in saying that insofar as those sections secure the freedoms of assembly, of religion, and of speech, section 11 of the ordinance here in question does not in any true sense violate them.

This court has not given to those guarantees the wide sweep which the federal supreme court in the last decade or two has given to similar guarantees in the first amendment to the federal constitution. Of course we are in complete accord that such rights must be vigilantly guarded not only from direct but also from indirect attacks. Insidious no less than open assaults upon them must be sternly resisted if they are not to be lost by erosion. But we are also aware that true liberty of any kind cannot exist without public order. Preservation of the balance between liberty on the one hand and authority and order on the other has ever been a difficult task for the courts and no less difficult for those immediately charged with the duty of maintaining public order. It should be our constant concern while safeguarding the first not to go so far as to make unduly difficult or perhaps impossible the discharge of the other.

In such frame of reference we have considered the ques-

tions propounded here. As far as our state constitution is concerned we see nothing contrary thereto in this ordinance. As to the federal constitution we follow the law as declared by the United States supreme court. It has unequivocally declared in *Davis* v. *Massachusetts, supra,* that an ordinance. like the one in the case at bar does not violate that constitution. In no later decision do we find that the supreme court has definitely overruled that case and decided to the contrary. We, therefore, hold on the authority of that case that the ordinance in question does not violate the federal constitution.

Accordingly we answer in the negative each question set out in the order of certification, and the papers in the case are ordered sent back to the superior court for further proceedings.

BAKER, J., dissenting. I am unable to agree with the majority opinion because in my judgment section 11 of chapter 149 of the ordinances of the city of Pawtucket enacted August 17, 1916 is clearly prohibitory and not in any sense merely regulatory in respect to the right of free speech in a public park in that city. The section does not even contain, for what it may be worth, a provision that a license may be issued by a municipal authority permitting the making of an address in any manner, at any time, or in any place. It may be that other sections of the chapter are regulatory in nature, but they in no way refer to or have any connection with section 11, which is the only portion of the chapter material to the questions before us. Since section 11 is plainly distinct and separable from the rest of the chapter the validity of that section should rest upon its own language without reference to other clearly unrelated provisions of said chapter.

Also in my opinion *Davis* v. *Massachusetts,* 167 U. S. 43, upon which the majority of the court relies, cannot properly be held to govern the instant case. While it is true that the above-cited case has never been specifically overruled

by the supreme court of the United States, nevertheless in my judgment that court, in later decisions where it referred to the *Davis* case, has so weakened its effect as an authority that I am unable to accept it as controlling here. Among such decisions are *Hague* v. *Committee for Industrial Organization,* 307 U. S. 496, *Jamison* v. *Texas,* 318 U. S. 413, *Saia v. New York,* 334 U. S. 558, *Niemotko v. Maryland,* 340 U. S. 268. See also *Milwaukee County* v. *Carter,* 258 Wis. 139, a recent opinion of a state court of last resort. Several of these cases involve the right of free speech in public parks. The general principles of law applicable to the right of freedom of speech and assembly under the first and fourteenth amendments of the constitution of the United States, as set out in such cases and in others, are in substance inconsistent with and contrary to the holding in the *Davis* case.

In addition it may be noted that in *Commonwealth* v. *Gilfedder,* 321 Mass. 335 (1947), the supreme court of that state, in a case involving the right to make an address on Boston Common contrary to an .ordinance of that city and certain rules of the board of park commissioners, held such ordinance and rules to be in conflict with the rights of freedom of speech, of the press, and of assembly guaranteed by the first amendment to the constitution of the United States. At page 342 of that opinion the court makes the following comment: "We confess to difficulty in reconciling the present decision with the decisions in the *Davis* cases. Nevertheless, we feel compelled to the result now reached by the broad sweep of principles set forth in great amplitude in more recent decisions of the Supreme Court of the United States."

For the reasons stated it is my opinion that section 11 of chapter 149 of the ordinances of the city of Pawtucket is contrary to the pertinent provisions of the first and fourteenth amendments to the United States constitution. I

therefore answer in the affirmative the first question certified to us by the trial justice.

In view of the fact that I have construed section 11 of the ordinance to be invalid under the federal constitution, and further as the defendant in his motion to quash did not specifically point out the particular sections of the constitution of this state which he alleges are violated by section 11, as our well-established practice requires, I am of the opinion that is is unnecessary for me to answer the second question certified by the trial justice.

CAPOTOSTO, J., concurs in the dissenting opinion of Mr. Justice Baker.

## APPENDIX
### "Chapter 149.
### Approved August 17, 1916.

An Ordinance Providing Rules And Regulations For Public Parks In The City Of Pawtucket.

*It is ordained by the City Council of the City of Pawtucket as follows*:

Section 1. No person is allowed to land or take passengers on any boat from the banks of the pond. Any person entering or leaving a boat must do so at the landing provided therefor.

Sec. 2. No person is allowed to occupy the tennis court for more than one hour if other patrons of the Park are waiting to play. While playing on the tennis court patrons must wear shoes without heels or spikes.

Sec. 3. No person is allowed to use profane language in the Park and Ladies and Children must not be annoyed or molested by anyone.

Sec. 4. Slater Park shall be open to the public from sunrise until eleven o'clock afternoon from April first to November first, and from sunrise until ten o'clock afternoon from November first to April first in each and every year; and no person shall enter or be within the limits of said park except between said hours without permission from the Commissioners or Superintendent of Parks.

Sec. 5. No person shall take, pluck, injure, destroy, cut, mark or deface any flower, root, plant, shrub, tree, building, fence, monument or other property in any park. No person shall throw a stone or other missile in any park.

Sec. 6. No person shall ride or drive within any park at a rate of speed exceeding ten miles per hour. No person shall ride or drive any animal, bicycle or other vehicle except upon the driveways; nor ride or drive any animal, bicycle or vehicle upon other than the right hand side of the driveways, except to cross such driveway or to turn out for some obstruction, or for some animal, bicycle or other vehicle going in the same direction.

Sec. 7. Automobiles, or other vehicles, must not be driven faster than ten miles per hour within the limits of the Park.

Sec. 8. No person shall drive any heavy team, nor any swill or residuum cart, nor any team or carriage for the purpose of business, into any park, without permission from the Commissioners or Superintendent of Parks.

Sec. 9. All vehicles while within the limits of the Park must conform strictly to law regarding lights to be carried.

Sec. 10. No person shall bathe or fish in, nor go into, nor send any animal into, any of the waters of any park, nor disturb any of the fish, birds, water fowl or animals in any park, nor throw or place any article or thing in said waters; provided however, that fishing in any such waters from boats owned by the City of Pawtucket may be allowed by the park commissioners at such times and under such regulations and upon payment of such fees as said commissioners may from time to time prescribe and determine.

Sec. 11. No person shall address any political or religious meeting in any public park; but this section shall not be construed to prohibit any political or religious club or society from visiting any public park in a body, provided that no public address shall be made under the auspices of such club or society in such park.

Sec. 12. No person, being the owner or having the charge or custody of any dog, cat, fowl, goat, swine or neat cattle, shall allow such dog, cat, fowl, goat, swine or neat cattle to enter any public park or to remain therein.

Sec. 13. No person, except in the employ of the commissioners or superintendent of parks, shall light, build or make any fire in any park, square or public grounds.

Sec. 14. No automobile, or other vehicle, shall be permitted to remain stationary in any part of said park for a longer period than ten minutes, except in such locations as shall be assigned for such purpose by the park commission; and any person in charge of such automobile or other vehicle shall at any time, upon the direction of any officer, immediately remove such automobile or other vehicle to such location as such officer shall direct.

Sec. 15. Any person violating any of the provisions of this ordinance shall be fined not exceeding twenty dollars, or be imprisoned for a term not exceeding ten days for each offense.

Sec. 16. This ordinance shall take effect upon its passage."

*William E. Powers,* Attorney General, *Raymond J. Pettine,* Special Counsel, for State.

*Aram A. Arabian, John J. McGrane, Hayden C. Covington,* of New York Bar, for defendant.