KENNETH E. LINDNER, Secretary Department of Administration
You ask whether the Department of Administration can issue the Reverend Mr. Splett a permit pursuant to sec. 16.845, Stats., to use part of the Capitol grounds on August 12, 1979, as requested in his letter of May 18, 1979.
In my opinion the answer is yes.
Pastor Splett, of Saint John's Lutheran Church in Madison, in conjunction with downtown Madison churches representing the African Methodist Episcopal, Episcopal, Lutheran, Presbyterian, Roman Catholic, United Church of Christ, and United Methodist denominations, requested a permit to use a part of the Capitol grounds for a "Celebration of Community Life" in connection with a people's fair and picnic in honor of the elderly. His letter further states that the churches hope to provide a community sing-along, responsive reading, and a message.
It is not certain that the proposed program is religious in nature. For example, the program calls for responsive reading and singing, but it is not stated what would be read or sung. The program is denominated a celebration of life in community in downtown Madison as a part of a community picnic in honor of senior citizens. Its purposes include expressing the participating churches' interest in and concern for the downtown community and to affirm life in community. For purposes of this opinion I assume that at least some of what will be said and sung is religious in nature and that at least some of the participants have religious motivations in joining this program. I conclude that the permit must issue.
Section 16.845 (1), Stats., permits use of state facilities "for free discussion of public questions, or for civic, social, recreational or athletic activities" at the discretion of the managing authority. Wisconsin Administrative Code sectionAdm 2.04 establishes the requirements for use of state buildings for the above activities.
That section states in part:
 Public meetings. (1) The department of administration as managing authority of the several state office buildings and *Page 219 
facilities may permit the same to be used by any governmental body or official, or any nonprofit, fraternal, religious, or veterans' organization for the purpose of governmental business, public meetings for the free discussion of public questions, or for activities of a broad public purpose if such use:
 (a) Does not interfere with the prime use of the building or facility.
(b) Does not unduly burden the managing authority.
 (c) Is not a hazard to the safety of the public or state employees; nor detrimental to the building or facility.
 (d) Does not expose the state to the likelihood of expenses and/or damages which cannot be recovered.
 (e) And is appropriate to the physical context of the building or facility.
In my opinion, both the statute and the administrative rule fairly contemplate use of the Capitol grounds for the proposed program. I believe this program is a civic or social activity within the meaning of sec. 16.845 (1), Stats., and is a public meeting for discussion of public questions and activity for a public purpose within the meaning of Wis. Adm. Code sectionAdm 2.04.
The Capitol grounds are a first amendment "public forum." The establishment of the permit system contemplates the use of the property for free expression activities. Such permit systems have been held to "open the forum." Intern. Soc. for Krishna Consc. v.Wolke, 453 F. Supp. 869, 874 (E.D. Wis. 1978) (General Mitchell Field, Milwaukee). In addition, the Capitol grounds offer a unique and appropriate setting for the people to express their views. Compare, A Quaker Action Group v. Morton, 516 F.2d 717
(D.C. Cir. 1975) (Lafayette Park and White House sidewalk, Washington, D.C.).
Once the Capitol ground becomes a "public forum," speakers cannot be constitutionally excluded on the basis of the content of their messages. In Lawrence U. Bicent. Com'n v. City ofAppleton, Wis., 409 F. Supp. 1319 (E.D. Wis. 1976), an Association of College Students challenged a school board guideline that prohibited the use of public school facilities for religious or political activities, unless such activities were nonpartisan or nondenominational. In sustaining the *Page 220 
challenge, the court stated: "If the First Amendment means anything, it means that Government shall not look to subject matter in regulating expression. To be sure, reasonable regulation of the time, place, and manner of speaking is permissible." Id. at 1324.
Speech on public property does not lose its first amendment protections simply by reason of its religious content. InMilwaukee County v. Carter, 258 Wis. 139, 45 N.W.2d 90 (1950), a group of Jehovah's Witnesses challenged a Milwaukee County ordinance that flatly prohibited denominational services in county parks. While the court pointed out that the religious use of tax-supported public school property had been forbidden inState ex rel. Weiss and others v. District Board, etc.,76 Wis. 177, 44 N.W. 967 (1890), it distinguished the use of a public park by the people exercising their constitutional right to peaceably assemble and freely exercise their religion. The court said:
 When, in sec. 3, art. 1, the Wisconsin constitution guarantees the right of free speech it does not except or restrict speech on the subject of religion and, if it should, such restriction would be void because in conflict with and subordinate to the First and Fourteenth amendments of the United States constitution which neither make nor recognize any such limitation. Speech on religious topics is just as free, and no freer, under the constitution as speech on other subjects and on no subject is it free from reasonable regulation to insure public order and safety and to reconcile the exercise of this right with the simultaneous enjoyment of equally sacred rights by others . . . . Government may, in the interests of public order, safety, and the equitable sharing of facilities, exercise reasonable control over when, where, and under what conditions public meetings may be held on public property; but to deny to the people all use of the people's property for the public discussion of specified subjects is an unconstitutional interference of rights expressly guaranteed by both state and federal constitutions.
258 Wis. at 145-146. (Emphasis added.) Restrictions on the time, place, and manner, such as those set out in Wis. Adm. Code section Adm 2.04, are proper concerns of the state.
In A Quaker Action Group v. Morton, 516 F.2d 717 (D.C. Cir. 1975), Quakers and others sought to use Lafayette Park and the *Page 221 
White House sidewalk. The court, in sustaining a permit requirement, said:
 The use of parks for public assembly and airing of opinions is historic in our democratic society, and one of its cardinal values. . . . We approve . . . the District Court's finding that the White House sidewalk, Lafayette Park, and the Ellipse constitute a unique situs for the exercise of First Amendment rights.
516 F.2d at 724-25. In Reilly v. Noel, 384 F. Supp. 741 (D. R.I. 1974), the court held that the rotunda of the State House in Rhode Island was a public forum for purposes of a prayer meeting conducted in protest of certain governmental action. In so doing the court said, 384 F. Supp. at 747:
 [T]here is no more appropriate place for citizens to express their views on issues of social and political significance and to communicate their feelings to their elected representatives than at the State Capitol.
Also see, Sellers v. Johnson, 163 F.2d 877 (8th Cir. 1947) (sheriff unlawfully blockaded public highways to prevent Jehovah's Witnesses from holding a meeting in a public park).
This case is clearly different from those in which the three-pronged test set forth in State ex rel. Warren v. Nusbaum,55 Wis.2d 316, 198 N.W.2d 650 (1972), is applicable in order to determine the existence of a violation of the establishment clause of the first amendment to the United States Constitution. The three-pronged test, which requires that the statute or practice have a secular purpose, that it have a primary effect which neither advances nor inhibits religion, and that it not foster an excessive government entanglement with religion is of concern where the government sponsors, financially supports, or is actively involved in a religious activity. See, for example,Allen v. Morton, 495 F.2d 65 (D.C. Cir. 1963) (government involvement in Christmas pageant), and Walz v. Tax Commission ofCity of New York, 397 U.S. 664 (1970) (government exempting religious property from taxes). In Walz the court stated,397 U.S. at 668: "It is sufficient to note that for the men who wrote the Religion Clauses of the First Amendment the `establishment' of a religion connoted sponsorship, financial support, and active involvement of the sovereign in religious activity." *Page 222 
 See, 67 Op. Att'y Gen. 180 (1978) (Christmas pageant in the State Capitol is permissible).
None of these elements of establishment is present in the case at hand. The same administrative code section which establishes the permit system, disclaims state sponsorship and sponsorship cannot fairly be inferred. Wisconsin Administrative Code sectionAdm 2.04 (6) provides:
 The utilization of state office buildings and facilities by an organization shall not imply endorsement, approval, or approbation by the state of Wisconsin or the department of administration, nor the extension of special privilege. Likewise the refusal by the department of administration to permit use of a state office building or facility shall not be interpreted as disapproval or censure of any organization, but shall be for reasons as set forth in section Adm 2.04 (1) (a) through (e) above.
More importantly, the Carter case stands for the proposition that this kind of case requires equal opportunity for free expression and does not involve state sponsorship. Even if the three-pronged test were applicable, there would be no violation of the establishment clause of the first amendment. Section 16.845, Stats., provides for payment by the applicant for the permit "for any expense arising out of any such use and for such sum as the managing authority may charge for such use." There is, therefore, no financial support. Finally, the state's sole involvement is in managing the administrative details. The state has no interest in the content of the program.
Milwaukee County v. Carter is controlling. Like the park in that case, the Capitol grounds in Madison have become a public forum open to all. With proper controls as to time, place, and manner of speaking, the Capitol grounds have been open to all varieties of views including nuclear power advocates and opponents, pro-abortionists and anti-abortionists, and many others. To exclude speech from this public forum because of its religious or anti-religious character would subvert the neutrality toward religion which the first amendment demands.See, Everson v. Board of Education of Ewing Tp., 330 U.S. 1, 18
(1947). *Page 223 
It is my opinion, therefore, that you should issue the requested permit.
BCL:CDH:GM