67 N.J. Super. 170 (1961)
170 A.2d 74
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SALVATORE CORBISIERO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Hudson County Court, Law Division.
Decided March 20, 1961.
*172 Mr. Leo S. Sullivan, attorney for the State of New Jersey.
Messrs. Meth, Bloom & Wood, attorneys for defendant-appellant (Messrs. Theodore Meth and Hayden C. Covington, appearing).
ROSEN, J.C.C.
This is an appeal by the defendant from judgments of conviction in the Municipal Court of the City of Bayonne. The trial proceedings were taken stenographically, and therefore the appeal is heard de novo on the record so made. R.R. 3:10-10(a).
The original complaints in the municipal court charge this defendant with violating sections 4 and 20 of an ordinance of the Hudson County Park Commission (Commission). The complaints were amended to delete reference to the Disorderly Persons Act.
Under R.R. 3:10-10, an appeal to the County Court from a conviction by a municipal court results in a trial de novo before the County Court. The trial de *173 novo nullifies the proceedings before the municipal court, except the initiating proceedings of complaint and warrant. State v. Joas, 34 N.J. 179, 189 (1961). The appeal acts as a waiver of all defects in the record. State v. Menke, 25 N.J. 66 (1957); R.R. 3:10-10(a).
The pertinent sections of the ordinance adopted by the Commission on December 7, 1953 are as follows:
"Section 4. No person within the parks shall preach or make any harangue, sing, play a musical instrument, or move in a military or civic parade, drill or procession, or hold any meeting or exhibit to the public any performance of any kind without written permission of the Hudson County Park Commission."
"Section 20. A permit to do any act shall authorize the same only in so far as it may be performed in strict accordance with the terms and conditions thereof. Any violation by its holder or his agents or employees of any term or condition thereof, shall constitute grounds for its revocation by the Commission or its authorized representative. In case of a breach of any permit, all moneys paid for on account thereof shall be forfeited to and retained by the Commission."
"Section 30. Any person convicted of violating any provisions of this Ordinance after trial before a magistrate of the local municipality in which said park is located, shall be liable to a fine not exceeding Fifty ($50.00) Dollars and costs for each offense. The fine collected shall be paid over by the said magistrate to the Hudson County Park Commission and the costs shall be retained and paid into the treasury of said local municipality."
Defendant was charged, by two separate complaints, with the commission of two separate offenses under the ordinance. The first complaint charges him with violation of the ordinance on July 24, 1960, in that he used a loudspeaker at a public religious meeting in a county park, contrary to the terms of a written permit issued by the Commission which prohibited the use of sound equipment. The meeting was held with permission of the Commission pursuant to sections 4 and 20 of the ordinance. The second complaint charged defendant with the offense of holding a meeting in the same county park on July 31, 1960, after the Commission revoked the original permit because of the use of the sound equipment at the meeting held in the park *174 on July 24, 1960, "in violation of the terms on which the permit was issued and in accordance with the provisions of Section 20 of the Ordinance."
Defendant is a member of Jehovah's Witnesses. It is admitted that application was made by the Bayonne Congregation of Jehovah's Witnesses to the Commission for permission to hold religious meetings in the county park. The Commission authorized meetings for July 3, 10, 24 and 31, 1960. The letter of authorization specifically provided that "sound equipment is prohibited by the Rules and Regulations of the Hudson County Park Commission." In response to an inquiry relative to the Commission's refusal to permit the use of sound equipment, the applicant was referred to sections 4 and 20 of the ordinance. The Commission insisted that the use of the park under the permit be "in strict accordance with the terms and conditions" of the permit. The meeting was held on July 24, 1960 and it is uncontradicted that the defendant was arrested "purely because he was using a sound device"; he was not disturbing other people using the park. On July 28, 1960 the Commission revoked its previous authorization to use the park on July 31, 1960 because of use of sound equipment at the previous meeting. The magistrate held that the defendant should have resorted to the courts for relief by way of injunction or mandamus to compel the Commission to permit the use of sound equipment, and having failed to do so, cannot complain about the actions of the Commission. Defendant was found guilty on both charges.
Defendant challenges the validity of the ordinance upon which the convictions were based, alleging the unconstitutionality of the ordinance in that its provisions grant unlimited discretion to the issuing authority, and therefore violates the rights of freedom of speech, assembly and worship, contrary to the provisions of the First and Fourteenth Amendments to the United States Constitution.
It has long been the practice for a person charged with violation of an ordinance to object, in a penal action *175 thereon, to the validity of the ordinance, and in that mode place before the court the limited question whether the ordinance is not a nullity in that particular instance. It is not necessary to first attack the claimed unlawful act in a mandamus proceeding to compel the issuance of a license. Lipkin v. Duffy, 119 N.J.L. 366 (E. & A. 1937).
The Commission is governed by the provisions of Revised Statutes of New Jersey, Title 40, chapter 37, sections 96 to 174. The statute provides, inter alia, as follows:
"Sec. 101  The commission may acquire, maintain and make available to the inhabitants of the county wherein it is appointed, and to the public, parks and open spaces for public resort and recreation * * * and for these purposes may take in fee or otherwise * * * lands or any right or interest therein for public parks and open spaces within the county. Deeds of conveyance therefor shall be made to the commission by its corporate name, and it shall preserve, care for, and lay out and improve any such parks and places, and make rules for the use and government of the same. * * *"
"Sec. 147  It shall be lawful to be present at and take part in, in county parks * * * on any day in the week, * * * sports, plays, games, recreations, concerts and amusements, to the extent and in such manner as the county park commission having control of the parks, shall designate; and such commission may make all necessary rules and regulations controlling and governing said sports, plays, games, recreations, concerts and amusements, and prohibiting them in such parks or parts of parks in which said board of park commissioners may deem it unwise to permit the same * * *."
"Sec. 152  The commission may:
(a) Make, alter, amend and repeal rules and regulations for the protection, regulation and control of the parks * * *."
Pursuant to the said statutory authority, the Commission adopted the ordinance for the protection, care, government and use of the parks under its control. The ordinance is penal in character. It is rudimentary that in a summary proceeding on a penal ordinance nothing is presumed or intended in favor of the complaint and conviction thereon. The Commission was necessarily obliged to sustain its power to pass the "rules and regulations" (ordinance) allegedly *176 violated, and to prove the charges made. Studerus Oil Co., Inc. v. Jersey City, 128 N.J.L. 286, 289 (Sup. Ct. 1942).
The Legislature has delegated to the Park Commission the power to regulate, control, and govern its parks in the interests of the public's general social well-being. Hill v. Borough of Collingswood, 9 N.J. 369, 375, 376 (1952). Justice Wachenfeld, speaking for a unanimous Supreme Court in Cammarata v. Essex County Park Comm., 26 N.J. 404, 410 (1958), said:
"It is settled beyond controversy that the Legislature may enact statutes setting forth in broad design its intended aims, leaving the detailed implementation of the policy thus expressed to an administrative agency. See Lane v. Holderman, 23 N.J. 304, at pages 319-320 (1957), and the cases and statutes cited and discussed therein. Indeed, the function of promulgating administrative rules and regulations lies at the very heart of the administrative process. Through the entrustment of such powers, our lawmakers achieve expert and flexible control in areas where the diversity of circumstances and situations to be encountered forbids the enactment of legislation anticipating every possible problem which may arise and providing for its solution. Como Farms, Inc. v. Foran, 6 N.J. Super. 306, 313 (App. Div. 1950); 42 Am. Jur., Public Administrative Law, §§ 4 and 35. There is no unconstitutional delegation of legislative authority as long as the administrative discretion is hemmed in by standards sufficiently definitive to guide its exercise. 1 Sutherland, Statutory Construction (3d ed. 1943), § 314." (Emphasis supplied)
Freedom of religious belief is a constitutional right. The rights of free speech and press, of assembly and of worship, are fundamental, but they are not absolute. Mr. Justice Cardozo, in discussing the freedoms guaranteed by the United States Constitution, said:
"We reach a different plane of social and moral values when we pass to the privileges and immunities that have been taken over from the earlier articles of the Federal Bill of Rights and brought within the Fourteenth Amendment by a process of absorption. These in their origin were effective against the federal government alone. If the Fourteenth Amendment has absorbed them, the process of absorption has had its source in the belief that neither liberty nor justice would exist if they were sacrificed. * * * This is *177 true, for illustration, of freedom of thought, and speech. Of that freedom one may say that it is the matrix, the indispensable condition, of nearly every other form of freedom. * * * So it has come about that the domain of liberty, withdrawn by the Fourteenth Amendment from encroachment by the states, has been enlarged by [the] latter-day judgments to include liberty of the mind as well as liberty of action." Palko v. State of Connecticut, 302 U.S. 319, 326, 327, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937).
In striking down a municipal ordinance forbidding the use of sound amplification devices in public places except with the permission of the chief of police, the court held the ordinance unconstitutional on its face, for it establishes a previous restraint on the right of free speech, in violation of the First Amendment, which is protected by the Fourteenth Amendment against state action. Section 3 of the ordinance provides "public dissemination, through loud-speakers, of items of news and matters of public concern and athletic activities shall not be deemed a violation of this section provided that the same be done under permission obtained from the chief of police." Mr. Justice Douglas, in Saia v. People of State of New York, 334 U.S. 558, 560, 561, 68 S.Ct. 1148, 1149, 92 L.Ed. 1574 (1947), held that:
"To use a loud-speaker or amplifier one has to get a permit from the Chief of Police. There are no standards prescribed for the exercise of his discretion. The statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound (the decibels) to which they must be adjusted. The ordinance therefore has all the vices of the ones which we struck down in Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213; Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949; and Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423. * * * The present ordinance has the same defects. The right to be heard is placed in the uncontrolled discretion of the Chief of Police. He stands athwart the channels of communication as an obstruction which can be removed only after criminal trial and conviction and lengthy appeal. A more effective previous restraint is difficult to imagine. Unless we are to retreat from the firm positions we have taken in the past, we must give freedom of speech in this case the same preferred treatment that we gave freedom of religion in the Cantwell case, freedom of the press in the Griffin case, and freedom of speech and assembly in the Hague case."
*178 In Kunz v. People of State of New York, 340 U.S. 290, 71 S.Ct. 312, 314, 95 L.Ed. 280 (1950), the appellant was convicted for holding a religious meeting on the city streets without a permit, in violation of the Administrative Code of New York City. The city adopted an ordinance which makes it unlawful to hold public worship meetings on the street without first obtaining a permit from the city police commissioner. Mr. Chief Justice Vinson, speaking for the court, used this incisive language.
"We have here, then, an ordinance which gives an administrative official discretionary power to control in advance the right of citizens to speak on religious matters on the streets of New York. As such, the ordinance is clearly invalid as a prior restraint on the exercise of First Amendment rights."
He further pointed out that "although this Court has recognized that a statute may be enacted which prevents serious interference with normal usage of streets and parks, Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941), we have consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places." (at pp. 293, 294 of 340 U.S., at p. 315 of 71 S.Ct.).
Mr. Justice Roberts, in Hague v. C.I.O., 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939), declared:
"Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied."
*179 In Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the United States Supreme Court held invalid an ordinance which required a license for soliciting money for religious causes.
"No one would contest the proposition that a state may not, by statute, wholly deny the right to preach or to disseminate religious views. Plainly such a previous and absolute restraint would violate the terms of the guarantee. It is equally clear that a state may by general and non-discriminatory legislation regulate the times, the places, and the manner of soliciting upon its streets, and of holding meetings thereon; and may in other respects safeguard the peace, good order and comfort of the community, without unconstitutionally invading the liberties protected by the Fourteenth Amendment." (At p. 304 of 310 U.S., at p. 903 of 60 S.Ct.)
"But to condition the solicitation of aid for the perpetuation of religious views or systems upon a license, the grant of which rests in the exercise of a determination by state authority as to what is a religious cause, is to lay a forbidden burden upon the exercise of liberty protected by the constitution." (At p. 307 of 310 U.S.,, at p. 904 of 60 S.Ct.)
In Niemotko v. State of Maryland, 340 U.S. 268, 271, 272, 71 S.Ct. 325, 327, 95 L.Ed. 267, 280 (1950), Mr. Chief Justice Vinson, speaking for the court, reiterated the legal principle of prior restraint.
"This Court has many times examined the licensing systems by which local bodies regulate the use of their parks and public places. See Kunz v. New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280. See also Saia v. New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948); Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). In those cases this Court condemned statutes and ordinances which required that permits be obtained from local officials as a prerequisite to the use of public places, on the grounds that a license requirement constituted a prior restraint on freedom of speech, press and religion, and, in the absence of narrowly drawn, reasonable and definite standards for the officials to follow, must be invalid. See Kunz v. New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280. In the instant case we are met with no ordinance or statute regulating or prohibiting the use of the park; all that is here is an amorphous `practice,' whereby all authority to grant permits for the use of the park is in the Park Commissioner and the City Council. No standards appear anywhere; no narrowly drawn limitations; no circumscribing *180 of this absolute power; no substantial interest of the community to be served. It is clear that all that has been said about the invalidity of such limitless discretion must be equally applicable here."
In Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 764, 85 L.Ed. 1049 (1941), a statute of that state prohibited a parade or procession upon any public street unless a special license therefor first be obtained from the proper officials of the town. The sole charge against appellants was that they were "taking part in a parade or procession" on public streets without a permit as the statute required. They were not prosecuted for distributing leaflets or for conveying information by placards or for issuing invitations to a public meeting, or for holding a public meeting, or for maintaining or expressing religious beliefs. The court specifically stated "their right to do anyone of these things apart from engaging in `a parade or procession' upon a public street is not here involved and the question of the validity of a statute addressed to any other sort of conduct than that complained of is not before us." (at p. 573 of 312 U.S., at p. 764 of 61 S.Ct.). The Supreme Court of New Hampshire, 91 N.H. 137, 16 A.2d 508, thought it significant that the statute prescribed "no measures for controlling or suppressing the publication on the highways of facts and opinions, either by speech or by writing"; that communication "by the distribution of literature or by the display of placards and signs" was in no respect regulated by the statute; that the regulation with respect to parades and processions was applicable only "to organized formations of persons using the highways"; and that "the defendants separately or collectively in groups not constituting a parade or procession" were "under no contemplation of the act." It was with this view of the limited objective of the statute that the state court considered and defined the duty of the licensing authority and the rights of the appellants to a license for their parade, with regard only to considerations of time, place and manner so as to conserve the public *181 convenience. The obvious advantage of requiring application for a permit was noted as giving the public authorities notice in advance so as to afford an opportunity for proper policing.
"If a municipality has authority to control the use of its public streets for parades or processions, as it undoubtedly has, it cannot be denied authority to give consideration, without unfair discrimination, to time, place and manner in relation to the other proper uses of the streets. We find it impossible to say that the limited authority conferred by the licensing provisions of the statute in question as thus construed by the state court contravened any constitutional right." (at p. 576 of 312 U.S., at p. 766 of 61 S.Ct.) (Emphasis supplied)
"* * * Nor is any question of peaceful picketing here involved, as in Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093, and Carlson v. California, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104. The statute, as the state court said, is not aimed at any restraint of freedom of speech, and there is no basis for an assumption that it would be applied so as to prevent peaceful picketing as described in the cases cited."
"The argument as to freedom of worship is also beside the point. No interference with religious worship or the practice of religion in any proper sense is shown, but only the exercise of local control over the use of streets for parades and processions." (at p. 578 of 312 U.S., at p. 767 of 61 S.Ct.)
In Poulos v. State of New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953), the appellant conceded that the ordinance which forbade the holding of a religious meeting in a public park without a license is valid on its face. The court having considered the admission by the appellant that the ordinance under attack was a valid ordinance, said that "in the present prosecution there was a valid ordinance, an unlawful refusal of a license, with remedial state procedure for the correction of the error. The state had authority to determine, in the public interest, the reasonable method for correction of the error, that is, by certiorari. Our Constitution does not require that we approve the violation of a reasonable requirement for a license to speak in public parks." (at p. 414 of 345 U.S., at page 771 of 73 S.Ct.). (Emphasis supplied)
*182 In Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 449, 93 L.Ed. 513 (1949), the court considered the validity of a provision in an ordinance of the City of Trenton, which reads as follows:
"4. That it shall be unlawful for any person, firm or corporation, either as principal, agent or employee, to play, use or operate for advertising purposes, or for any other purpose whatsoever, on or upon the public streets, alleys or thoroughfares in the City of Trenton, any device known as a sound truck, loud speaker or sound amplifier, or radio or phonograph with a loud speaker or sound amplifier, or any other instrument known as a calliope or any instrument of any kind or character which emits therefrom loud and raucous noises and is attached to and upon any vehicle operated or standing upon said streets or public places aforementioned."
The court held that section 4 of the ordinance bars sound trucks from broadcasting in a "loud and raucous" manner on the streets, and that there is no restriction upon the communication of ideas or discussion of issues by human voice, by newspaper, or by pamphlets. "Sound trucks may be utilized in places such as parks or other open spaces off the streets" (at p. 85 of 336 U.S., at p. 452 of 69 S.Ct.); and "absolute prohibition within municipal limits of all sound amplification, even though reasonably regulated in place, time and volume, is undesirable and probably unconstitutional as an unreasonable interference with normal activities." (at pp. 81-82 of 336 U.S., at p. 451 of 69 S.Ct.).
In Times Film Corp. v. City of Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961), the United States Supreme Court voted 5 to 4 in holding that a municipal code of Chicago which requires submission of all motion pictures for examination prior to their exhibition, and forbids their exhibition unless they meet certain standards, is not void on its face as violative of the First and Fourteenth Amendments. It is significant that the majority concluded their opinion with the following language:
*183 "As to what may be decided when a concrete case involving a specific standard provided by this ordinance is presented, we intimate no opinion. The petitioner has not challenged all  or for that matter  any of the ordinance's standards. Naturally we could not say that everyone of the standards, including those which Illinois' highest court has found sufficient, is so vague on its face that the entire ordinance is void. At this time we say no more than this  that we are dealing only with motion pictures and, even as to them, only in the context of the broadside attack presented on this record." (at p. 50 of 365 U.S., at p. 395 of 81 S.Ct.) (Emphasis supplied.)
Mr. Chief Justice Warren, in his dissenting opinion, reviews the leading cases involving the freedoms guaranteed by the First Amendment and encompassed within the Fourteenth Amendment. He points out that the Supreme Court distinguished the holding in Saia, supra, and Kovacs, supra, in that the Kovacs ordinance imposed no previous restraint but the ordinance in Saia did. (at p. 61 of 365 U.S., at p. 50 of 81 S.Ct.). In commenting upon the majority view in Times Film Corp., the Chief Justice observed that
"* * * This case clearly presents the question of our approval of unlimited censorship of motion pictures before exhibition through a system of administrative licensing." (at p. 50 of 365 U.S., at p. 395 of 81 S.Ct.)
Whether this decision lends credence to the charge that "we are in an age of rebellion against liberty," (Jackson, The Supreme Court in the American System of Government, p. 7 (1955)), will have to be finally determined by higher authority than this court. For the purpose of this decision it suffices to say that Times Film Corp. v. Chicago, supra, is clearly distinguishable from the case sub judice.
The State presses upon the court the case of Commonwealth v. Davis, 162 Mass. 510, 39 N.E. 113, 26 L.R.A. 712 (Sup. Jud. Ct. 1895), affirmed sub nom. Davis v. Commonwealth of Massachusetts, 167 U.S. 43, 17 S.Ct. 731, 42 L.Ed. 71 (1897).
Mr. Justice Holmes, in sitting as a member of the Massachusetts court, wrote the opinion sustaining a city ordinance *184 prohibiting anyone from making "any public address" on the Boston Common without first obtaining a permit from the mayor. "For the legislature absolutely or conditionally to forbid public speaking in a highway or public park," he held "is no more an infringement of the rights of a member of the public than for the owner of a private house to forbid it in his house." (At p. 511 of 162 Mass., at p. 113 of 39 N.E.). Failing to perceive any issue of free speech or assembly, he saw the ordinance as being merely "directed toward the modes in which the Boston Common may be used."
Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) ignored the ruling in the Davis case. Mr. Justice Butler, in his one-sentence dissent, insisted that this ordinance "in principle * * * does not differ from the Boston ordinance, as applied and upheld by this court, * * * in Davis v. Massachusetts, 167 U.S. 43, 17 S.Ct. 731, 42 L.Ed. 71 * * *." (At p. 533 of 307 U.S., at p. 972 of 59 S.Ct.).
The ordinance of the City of Portsmouth, New Hampshire, sustained in Poulos v. State of New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953), was again the subject of judicial review in State v. Derickson, 97 N.H. 91, 81 A.2d 312 (Sup. Ct. 1951). In sustaining another section of the same ordinance, Justice Kenison, speaking for a unanimous Supreme Court, used this strong language:
"At this juncture it is important to state that in sustaining the Portsmouth ordinance no reliance is placed on Davis v. Massachusetts, 167 U.S. 43, 17 S.Ct. 731, 42 L.Ed. 71, which is believed to have been so eroded by the force of time and recent decisions as to be valueless as a binding precedent." (At p. 315 of 81 A.2d.)
Justice Baker, dissenting in State v. Fowler, 79 R.I. 16, 83 A.2d 67, 73 (Sup. Ct. 1951), reversed 345 U.S. 67, 73 S.Ct. 526, 97 L.Ed. 828 (1953), said:
"Also in my opinion Davis v. Commonwealth of Massachusetts, 167 U.S. 43, 17 S.Ct. 731, 42 L.Ed. 71, upon which the majority *185 of the court relies, cannot properly be held to govern the instant case. While it is true that the above-cited case has never been specifically overruled by the supreme court of the United States, nevertheless in my judgment that court, in later decisions where it referred to the Davis case, has so weakened its effect as an authority that I am unable to accept it as controlling here. [cases cited]"
Davis, decided in the latter part of the 19th Century, made its mark in legal history. Judicial thinking in the 20th Century on the subject of "liberty of mind," as expressed by Mr. Justice Cardozo, should place the Davis case at final rest.
Commonwealth v. Gilfedder, 321 Mass. 335, 73 N.E.2d 241 (Sup. Jud. Ct. 1947) is illustrative of the legal problems under discussion. Defendants were charged with making an "oration," and distributing pamphlets on Boston Common without a permit. By statute, park commissioners have the authority to make rules for the use of parks within their jurisdiction. The park commissioners' rules provided that no person should "preach, or pray aloud, or make any oration * * * excepting on Franklin Field and on Boston Common when so authorized in a written permit of the Board of Park Commissioners or His Honor, the Mayor," and that no person should, "except in a place designated by or as authorized in a rule, or regulation, or a written permit of the Board of Park Commissioners * * * sell, or distribute any goods, wares or circulars, or any other thing." The court held that on their face these rules and regulations are "in conflict with the rights of freedom of speech, of the press, and of assembly guaranteed by the First Amendment to the Constitution of the United States, made applicable to the States by § 1 of the Fourteenth Amendment." The court continued:
"A series of recent decisions by the Supreme Court of the United States has, as we read the cases, established the proposition that the exercise of these rights cannot be wholly precluded in public places such as streets and parks by sweeping general prohibitions and cannot be subjected to the requirement of permits the granting *186 of which is not governed by binding rules adequate to insure the exercise of the rights under reasonable conditions. [cases cited]"
Justice Brennan (now Associate Justice of the United States Supreme Court) in his opinion for a unanimous State Supreme Court in Weiner v. Borough of Stratford, County of Camden, 15 N.J. 295, 299 (1954), said:
"* * * unless the provisions of a licensing and regulatory ordinance vesting discretion in licensing officials to grant or deny a license provide adequate standards to govern the deliberations of the officials having the discretionary power, the provisions must be struck down as utterly void. This principle has been too long firmly settled to require elaboration. Lipkin v. Duffy, 119 N.J.L. 366 (E. & A. 1938); Librizzi v. Plunkett, 126 N.J.L. 17 (Sup. Ct. 1940); Phillips v. Town of Belleville, 135 N.J.L. 271 (Sup. Ct. 1947); Finn v. Municipal Council of City of Clifton, 136 N.J.L. 34 (E. & A. 1947); Mayor & Council of City of Hoboken v. Bauer, 137 N.J.L. 327 (Sup. Ct. 1948); Adams Theater Co. v. Keenan, 12 N.J. 267 (1953). The reasons underlying the principle are summarized in 9 McQuillin, Municipal Corporations, sec. 26.64, as follows:
`The fundamental rules that a municipal legislative body cannot * * * vest arbitrary or unrestrained power or discretion in * * * itself, and that all ordinances must set a standard or prescribe a rule to govern in all cases coming within the operation of the ordinance and not leave its application or enforcement to ungoverned discretion, caprice or whim are fully applicable to the administration and enforcement of ordinances requiring licenses or permits and imposing license or permit fees or taxes. Accordingly, an ordinance requiring a license or permit, or imposing a license fee or tax, should provide all of the terms under which the license or permit is to be issued and prescribe a uniform rule applicable to all of the class to which it is intended to apply, * * * ungoverned discretion in officials, * * *, in the enforcement of ordinances, makes possible, if not probable, abusive discrimination in violation of the constitutional guaranty of due process and equal protection of the law, and also violates the requisite of reasonableness pertaining to all ordinances. The requirement of definite standards and conditions for the guidance of authorities in the execution of discretionary power in licensing sometimes is called the `ordinary business rule.'"
It is clear that the right to religious belief is absolute, but that the right to religious speech or activity may be qualified, albeit, only to a very limited degree. The *187 regulation must stop short of denial or material impairment of the constitutional right. No standards of any kind are provided in this ordinance to guide the commission, the body vested with the power of ultimate decision, in approving or disapproving the issuance of a license. The purported power vested in the Commission in this respect is entirely unrestrained. No norm or standard of even minimal sufficiency is provided. The ordinance does not prohibit or regulate the use of sound equipment. The ordinance, which purports to be "rules and regulations," gives the Commission uncontrolled and limitless discretion in the administration and enforcement of sections 4 and 20 of said ordinance.
"It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable. They are cognate rights, * * *." Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 323, 89 L.Ed. 430 (1944).
Sections 4 and 20 of ordinance No. 1 are invalid. They impair and abridge defendant's rights and liberties guaranteed by the First and Fourteenth Amendments to the United States Constitution.
Sections 4 and 20 of the ordinance under review being invalid, the judgments of conviction are reversed. A judgment of acquittal will be entered in each of the two cases.