Argued June 5, reversed September 20, former opinion modified,
petition for rehearing denied December 20, 1961

# CITY OF PORTLAND *v.* WELCH

364 P. 2d 1009
367 P. 2d 403

*Bernard Shevach,* Portland, argued the cause and filed a brief for appellant.

*Richard Braman,* Deputy City Attorney, Portland, argued the cause for respondent. With him on the brief were Alexander G. Brown, City Attorney, and Emory J. Crofoot, Deputy City Attorney, Portland.

Paul R. Meyer and Carl R. Neil, Portland, filed a brief for the American Civil Liberties Union of Oregon as *amicus curiae.*

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Lusk, Justices.

GOODWIN, J.

The proprietor of a theater appeals from a conviction of violating Art. 30, Police Code of the City of Portland, Oregon. On April 5, 1960, Mrs. Welch exhibited a motion picture without first excising therefrom two scenes ordered removed as a condition to the issuance of a license to exhibit the film.

Mrs. Welch was convicted in the Municipal Court, and in due course appealed *de novo* to the circuit court. Following an adverse ruling on demurrer in the circuit court, trial by jury was waived, and judgment of conviction was entered. The issue presented in this court is whether the complaint states a crime.

Omitting formal allegations and signatures, the complaint charges:

"The above-named defendant on the 5th of April, 1960, within the corporate limits of the said City of Portland did wilfully and unlawfully show a motion-picture, to wit: The Lovers, conditionally approved by officers designated to view said motion-picture by the Chief of Police, to wit: John F. Fraser and James C. Quinn, at the Guild Theater, 821 S.W. 9th Avenue, without first making the eliminations required as a condition to such approval, to wit: the night bedroom scene after boat ride and the bathroom scene where both enter bathtub".

Upon demurrer, we have no evidence of the nature of a particular picture. For all this court knows, or has reason to know, the picture described in the complaint could have been pure, pornographic, or neither. If exhibiting the picture was a crime under ORS 167.150 (1) (obscenity law), a prosecution might have raised the question of obscenity. *State v. Jackson,* 71 Adv Sh 391, 224 Or 337, 356 P2d 495. But this is not such a prosecution and our attention is directed to the ordinance rather than to the picture.

On its face, the ordinance would appear to apply to films of every kind. Provisions relevant to this case read as follows:

"ARTICLE 30. MOTION-PICTURE AND ENTERTAINMENT SUPERVISION.

"[New Article 30 added by Ordinance No.

97898 passed and effective February 13, 1953].

"*Section 16-3001.* APPROVAL OF FILMS, VAUDEVILLE, STAGE SHOWS AND OTHER ENTERTAINMENT.

"It shall be unlawful for any person to show, exhibit, or display any motion-picture, or present any stage or floor show, vaudeville or any other form of theatrical, stage, or screen entertainment * * * unless the same shall have first been approved as provided in this article. It shall be unlawful for any person to show, exhibit, or display any motion-picture, or present any stage or floor show, vaudeville or any other form of theatrical, stage or screen entertainment conditionally approved without first making the changes or eliminations required as a condition to such approval, or to present such entertainment in violation of the conditions imposed * * *.

"*Section 16-3002.* STANDARDS OF APPROVAL.

"No motion-picture, stage or floor show, vaudeville or other form of theatrical, stage, or screen entertainment, shall be approved when the same, or advertising in connection therewith, is deemed to be indecent, immoral, obscene, suggestive, immodest or designed or tending to ferment religious, political, racial or social hatred or antagonism or detrimental to the public peace and welfare. Approval shall not be given to any motion-picture film, as hereinafter defined, stage or floor show, vaudeville or other form of theatrical, stage, or screen entertainment which violates the provisions of this section or any other provision of this article; particularly, no approval shall be given to any motion-picture, stage or floor show, vaudeville or other form of theatrical, stage or screen entertainment which:

"(a) By action or words is obscene, indecent or immoral;

"(b) By action or words presents any gruesome, revolting or disgusting scenes or subjects;

"(c) Tends to disturb the public peace, or

"(d) Tends to corrupt the public morals.

"*Section 16-3003.* APPLICATION FOR APPROVAL.
"* * * * *.

"*Section 16-3004.* VEWING [sic] AND APPROVAL OR REJECTION.
"* * * * *.

"*Section 16-3005.* SHOWING MOTION-PICTURE WITHOUT APPROVAL.
"* * * * *.

"*Section 16-3006.* WITHDRAWAL OF APPROVAL.

"The Chief of Police may, on his own motion, revoke any approval which may have been issued * * *. Thereafter it shall be unlawful to make exhibition thereof.

"*Section 16-3007.* DISCRETION AS TO VIEWING IN CERTAIN CASES.

"When the Chief of Police * * * is already familiar with a motion-picture * * * and is satisfied that the same does not violate Section 16-3002, a view may be taken or not as provided in Section 16-3004 * * *.

"*Section 16-3008.* VIEWERS.

"[Section 16-3008 amended by Ordinance No. 100319 passed and effective April 22, 1954].

"The Chief of Police hereby is authorized to appoint viewers in such number as he may deem necessary. Viewers shall serve without compensation and may be removed from office at any time at the pleasure of the Chief of Police * * *.

"*Section 16-3009.* APPEAL TO COUNCIL.

"Any person * * * who is dissatisfied with refusal or withdrawal of approval, disapproval,

conditions upon approval, or order requiring changes or eliminations in any motion-picture, stage or floor show, vaudeville or other entertainment, shall have the right of appeal to the City Council. Such appeal shall be taken within five days after the rendition of the decision by serving a written copy of the notice of appeal upon the Chief of Police and by filing with the City Auditor the original thereof. The Auditor shall thereupon place said appeal upon the next regular Council Calendar whereupon the Council shall hear and determine such appeal and its determination shall be final * * *.

"*Section 16-3010.* DEFINITION OF FILM. "* * * * * *"

■ The demurrer challenged the city's complaint as failing to charge a crime. Additional issues under both the state and federal constitutions have been tendered by the defendant. She urges us to hold that both constitutions prohibit the enactment of any such ordinance. However, there is no need to consider this question. The federal question has been answered adversely to the defendant in *Times Film Corp. v. City of Chicago,* 365 US 43, 81 S Ct 391. We do not review provisions of the ordinance which the city has not attempted to enforce against this defendant. *Huron Cement Co. v. Detroit,* 362 US 440, 442 (footnote 1), 80 S Ct 813, 4 L Ed2d 852, 855; *Utah Power and L. Co. v. Pfost,* 286 US 165, 186, 52 S Ct 548, 76 L Ed 1038; 16 CJS 226, 231, 233, 234, Constitutional Law § 76. We will consider only the issue raised by the demurrer to the complaint.

On the record before us, it appears that the censors, after seeing the picture, ordered two scenes deleted. It was for showing the picture intact, thereby flouting the order of the censors, that the defendant

was arrested and prosecuted. Mrs. Welch has not been accused of failing to submit the film for police inspection. Cf. *Times Film Corp. v. City of Chicago,* supra. The question for decision, t h e r e f o r e, is whether it is a crime to disobey an order to cut and splice film as directed by the police chief. If so, the complaint stated a violation. If not, it was error to overrule the demurrer.

Following the decision of *Mutual Film Corp. v. Ohio Industrial Comm.,* 236 US 230, 35 S Ct 387, 59 L Ed 552 (1915), motion pictures were considered to be mere commercial spectacles subject to regulation. See *Censorship of Motion Pictures,* 49 Yale L J 87-113, and *Entertainment: Public Pressures and the Law,* 71 Harv L Rev 326. *Mutual Film* was overruled in *Joseph Burstyn, Inc. v. Wilson,* 343 US 495, 72 S Ct 777, 96 L Ed 1098 (1952), and motion pictures were brought within the basic protection of the First and Fourteenth Amendments. In *Kingsley Pictures Corp. v. Regents,* 360 US 684, 689-690, 79 S Ct 1362, 3 L Ed2d 1512 (1959), the court qualified the *Burstyn* case by holding open the question whether "the controls which a state may impose upon this medium of expression are precisely coextensive with those allowable for newspapers [citation], books [citation], or individual speech [citation]."

The city cites in support of its complaint the case of *Kingsley Books, Inc. v. Brown,* 354 US 436, 77 S Ct 1325, 1 L Ed2d 1469, where, after a finding that certain books were obscene, an injunction was allowed against their further distribution. An injunction is, of course, a form of prior restraint. *Kingsley Books, Inc.,* however, does not hold that city police officers may censor books at their pleasure. The case merely

elaborated upon the prior-restraint rule of *Near v. Minnesota,* 283 US 697, 51 S Ct 625, 75 L Ed 1357, and held that judicially proven obscenity can be enjoined.

■ Assuming without deciding that the city may censor motion pictures without running afoul the First Amendment, as suggested by the United States Supreme Court in *Times Film Corp. v. City of Chicago,* 365 US 43, 81 S Ct 391, 5 L Ed2d 403, supra, and laying aside questions of how much thought control the Oregon Constitution will allow, we conclude that the complaint in this case failed to charge the defendant with a crime.

■ Nothing in the complaint advised the exhibitor how the film fell short of any standards set by the city, nor why the censor had ordered the scenes deleted. The ordinance purports to give the police chief some power to prevent the public display of obscenity, but the complaint did not charge that the picture or any part thereof was obscene. To sustain the quoted complaint against a timely demurrer is to hold that the police chief has plenary power to order an exhibitor to edit any motion picture to satisfy the censor. Any such interpretation would make the ordinance patently unconstitutional. *William Goldman Theatres, Inc. v. Dana,* 173 A2d 59; *Zenith International Film Corp. v. City of Chicago, Ill.,* 291 F2d 785 (7th Cir 1961); *Staub v. City of Baxley,* 355 US 313, 78 S Ct 277, 2 L Ed2d 302; *Holmby Productions, Inc. v. Vaughn,* 350 US 870, 76 S Ct 117, 100 L Ed 770; *Superior Films v. Dept. of Education,* 346 US 587, 74 S Ct 286, 98 L Ed 329; *Gelling v. Texas,* 343 US 960, 72 S Ct 1002, 96 L Ed 1359; *Joseph Burstyn, Inc. v. Wilson,* 343 US 495, supra.

■ We are bound to uphold the constitutionality of legislation when it is possible to do so. *State v. Jackson,* supra, and cases cited therein. Since we could not sustain the ordinance if it were construed to make criminal the defendant's conduct described in the quoted complaint, we must hold that the complaint did not allege a crime. It was error to overrule the demurrer.

Reversed.

## ON REHEARING

Alexander G. Brown, City Attorney, and Richard A. Braman and Delbert A. Weaver, Deputy City Attorneys, Portland, for the petition.

## GOODWIN, J.

■ Courts traditionally seek to interpret legislation, if possible, to avoid rendering it invalid. In our previous opinion, handed down September 20, 1961, we followed this doctrine. We rested our decision on the fatal defect in the complaint so we would not have to reach the virtually obvious unconstitutionality of the ordinance if it granted plenary powers of censorship to a police officer. The complaint did not describe an offense. Accordingly, we reversed.

The city of Portland now seeks a rehearing on the ground that in avoiding the constitutional question we stepped outside the bounds of our statutory jurisdiction.

ORS 221.360 provides:

"In all cases involving the constitutionality of the charter provision or ordinance under which the conviction was obtained as indicated in ORS 221.350, such person shall have the right of appeal to the circuit court in the manner provided in ORS 221.350, regardless of any charter provision or ordinance prohibiting appeals from the municipal court because of the amount of the penalty or otherwise. An appeal may likewise be taken in such cases from the judgment or final order of the circuit court to the Supreme Court in the same manner as other appeals are taken from the circuit court to the Supreme Court in other criminal cases. Where the right of appeal in such cases depends upon there being involved an issue as to the constitutionality of the charter provision or ordinance, the decision

of the appellate court shall be upon such constitutional issue only."

In *City of Salem v. Polanski*, 202 Or 504, 276 P2d 407, the defendant appealed from a conviction of violating an ordinance which denounced driving while under the influence of intoxicating liquor. As the defendant Polanski did not challenge the constitutionality of the ordinance, we dismissed his appeal.

The city of Portland now demands the same result. It contends that once we have construed the ordinance so as to avoid passing upon its constitutionality, our jurisdiction evaporates and we must ignore the fact that the complaint did not state an offense.

Granting that our jurisdiction is thus limited, the bizarre result demanded by the city need not necessarily follow. The doctrine of self-imposed judicial restraint, in the exercise of which we stopped short of the constitutional question in our original opinion, has much to commend it; but it is not a procrustean device for amputating reason and logic. For a discussion of the conflicting results reached by the United States Supreme Court on one aspect of judicial restraint, see *Note*, 53 Yale L J 788 (1944); 56 Harv L Rev 1162 (1943). See, also, Pollak, *Mr. Justice Frankfurter: Judgment and the Fourteenth Amendment*, 67 Yale L J 304, 315-16 (1957); Summers, *Frankfurter, Labor Law and the Judge's Function*, 67 Yale L J 266, 272-76 (1957).

Under ORS 221.360, as pressed upon us by the city, we cannot save the ordinance except by affirming a void conviction. Since the refusal to reach the constitutional question results in a patent absurdity, we must consider the constitutionality of the ordinance.

The licensing laws of the Seventeenth Century pro-

ceeded upon the theory that ordinary folk did not know what was meet and proper; therefore, censors were designated to make wise choices in their behalf. 13 & 14 Car 2, ch 33 (1662). The only standards were the opinions of the censors. The draftsmen of the federal Bill of Rights failed to appreciate such parliamentary solicitude for approved thinking, and rejected the entire scheme in 1789. See Madison's *Report on the Virginia Resolutions*, 4 Elliot's Deb (2d ed) 546, 567-76. It is self-evident that the draftsmen of Oregon's basic charter wanted no censorship in Oregon.

6-8. Article I, § 8 of the Oregon Constitution reads:

> "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right.—"

As a preliminary matter, we note that this provision applies to moving pictures. Cf. *Joseph Burstyn, Inc. v. Wilson*, 343 US 495, 72 S Ct 777, 96 L Ed 1098 (1952). Article I, § 8, makes a sharp distinction between legislative restraint imposed prior to publication and penalties imposed afterward. Censorship by licensing is, of course, a prior restraint. One conspicuous vice of administrative licensing such as that challenged in the case at bar is that, as a practical matter, it imposes the burden on the wrong party. Emerson, *The Doctrine of Prior Restraint*, 20 L & Contemp Prob 648, 655-60 (1955). After the censor has accomplished his work, there may be a right of appeal to an administrative agency and eventually to a court, but the appellant bears the very considerable burden of showing that the censor has abused his power. This shifting of the burden alone is repugnant to Article I, § 8.

■ Although we rely upon our own constitution, we note that the ordinance is also repugnant to the First and Fourteenth Amendments of the United States Constitution, since it contains no constitutional standards for enforcement. *Holmby Productions, Inc. v. Vaughn,* 350 US 870, 76 S Ct 117, 100 L Ed 770 (1955); *Superior Films v. Dept. of Education,* 346 US 587, 74 S Ct 286, 98 L Ed 329 (1954); *Gelling v. Texas,* 343 US 960, 72 S Ct 1002, 96 L Ed 1359 (1952); *Joseph Burstyn, Inc. v. Wilson,* supra. See, also, dissenting opinion of Warren, C.J., in *Times Film Corp. v. Chicago,* 365 US 43, 81 S Ct 391, 5 L Ed2d 403 (1961). Despite the city's reliance upon the provision in the ordinance for review by the city council, the ordinance remains repugnant to federal due process. The provision for review by the council merely substitutes the unguided discretion of a committee for that of its appointee. The council's action in ratifying a particular instance of censorship can not cure the unconstitutional vagueness of the ordinance. *William Goldman Theateres, Inc. v. Dana,* 405 Pa 83, 173 A2d 59 (1961); *Zenith International Film Corp. v. City of Chicago, Ill.,* 291 F2d 785 (7th Cir 1961). (Both decided in light of *Times Film Corp. v. Chicago,* supra.) See, also, *State v. Corbisiero,* 67 N J Super 170, 182, 170 A2d 74, 82 (1961).

The city has constitutional remedies at its disposal. An injunction may lie against a particular kind of communication, subject to Article I, § 8. See *Crouch v. Central Labor Council,* 134 Or 612, 293 P 729, 83 ALR 193 (1930). Further, it would seem that an injunction will lie against obscenity if the party seeking the remedy can prove a case in court. Cf. *Kingsley Books, Inc. v. Brown,* 354 US 436, 77 S Ct 1325, 1 L Ed2d 1469. It should be obvious that the city

has yet another protection against purveyors of obscenity. *State v. Jackson*, 224 Or 337, 356 P2d 495, points the way to a constitutional method for protecting the legitimate public interest in freedom from commercial filth. Our constitution does not prohibit sending convicted obscenity dealers to jail; but it does forbid the censor usurping the function of judge and jury.

■ It is our conclusion that the rehearing must be denied, but that the former opinion must be modified in two particulars. First, the ordinance is unconstitutional. Second, the references in our former opinion to violations of the ordinance as "crimes" or "criminal" should be understood in light of the well-settled rule in this state that violations of city ordinances are not necessarily crimes. It was not intended to suggest otherwise.

Our former opinion is modified accordingly. The petition for rehearing is denied.