THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES SMITH, Appellant.*

Court of Special Sessions, City of New York, Appellate Part, First Judicial Department, February 23, 1932.

*Albert E. Kane,* for the appellant.

*Thomas C. T. Crain, District Attorney [Joshua Egelson* of counsel], for the respondent.

SALOMON, J. The defendant is charged with violation of section 20 of article 3 of chapter 23 of the Code of Ordinances of the City of New York, which section reads as follows: " Public worship. No person shall be concerned or instrumental in collecting or promoting any assemblage of persons for public worship or exhortation, or under any pretense therefor, in any park, street, or other public place; provided, that a clergyman or minister of any denomination, or any person responsible to or regularly associated with any church or incorporated missionary society, or any lay-preacher,

* Revd., 259 N. Y. 48.

or lay-reader may conduct religious services in any public place or places specified in a permit therefor, which may be granted and issued by the police commissioner. This section shall not be construed to prevent any congregation of the Baptist denomination from assembling in a proper place for the purpose of performing the rites of baptism, according to the ceremonies of that church."

The defendant was specifically charged with having on October 20, 1931, been instrumental in collecting an assemblage for the purpose of preaching atheism on a public highway at the corner of Fifty-ninth street and Columbus Circle in the city and county of New York, without previously having applied for and obtained a permit pursuant to the provisions of the above section.

There is no dispute as to the facts herein, but the defendant contends that this section does not apply to the public assemblage had by him on the day in question and also contends that said section is unconstitutional in that it tends to deprive the defendant of his constitutional right to freedom of speech.

A careful reading of the testimony and the provisions of this section satisfies me that the defendant violated the above section, and in my opinion this section does not in any way interfere with the freedom of speech, nor are the provisions thereof unreasonable, or in contravention of any constitutional right.

I, therefore, vote that the magistrate was justified in finding the defendant guilty and I vote to affirm said judgment.

FETHERSTON, J., concurs.

KERNOCHAN, P. J. (dissenting). The appellant was convicted of a violation of the Ordinances of the City of New York as set forth in the opinion of my colleagues.

The pleading in this case was the complaint which reads as follows: " Leo Doyle of No. 18th Precinct Street, occupation Police Officer being duly sworn, deposes and says, that on the 20th day of October, 1931, at the City and County aforesaid Charles Smith (Now here) did unlawfully while instrumental in collecting an assemblage for the purpose of preaching Atheism (a certain sect and belief) without having proper permit on 59th Street and Columbus Circle deponent observed defendant in the act of preaching thereat where at least 150 persons has assembled in violation of Chapter 23, Article 3, Section 20, of the Ordinances of the City of New York.

"LEO V. DOYLE.

" Sworn to before me, this 21
day of October, 1931.

"RAPHAEL R. MURPHY,
"City Magistrate."

This complaint does not charge the appellant with gathering a crowd for the purpose of " Public Worship or Exhortation " which would have been a violation of the ordinance, but it charges him with " collecting an assemblage for the purpose of preaching Atheism."

The subject of the address delivered by the appellant is of no importance except in so far as it may be construed as public worship or exhortation.

That the complaint fails to properly charge a violation of this ordinance is not urged by the appellant either in his notice of appeal or in the brief submitted by him. My colleagues have decided that the address delivered by the appellant was an act of public worship or exhortation. To this I cannot agree.

The appellant is the president of the American Association for the Advancement of Atheism, which is not incorporated as a religious body, but as a membership organization. The appellant is not a clergyman, a minister of any denomination nor is he associated with any church or incorporated missionary society, he is not a lay preacher or a lay reader representing any such society or church.

The address complained of was delivered publicly at Fifty-ninth street and Columbus Circle in the city and county of New York. At this place two other speakers were addressing two groups of people and all three speakers were conducting themselves in a perfectly orderly manner. The police interfered only because the appellant had no license.

The police officer's testimony is the case for the prosecution. His evidence shows that the appellant had gathered a crowd at the place mentioned in the complaint and that he stated that the Bible was not inspired; that the President of the United States had been asked by his society not to issue his Thanksgiving Day proclamation telling the people of this country to go to church and give thanks for the blessings of the year; that on Thanksgiving Day he purposed to hold a meeting and " tell God just what they thought of the evils he has put in the world."

The appellant admitted all this and said he also spoke of certain laws he wished to have repealed and described the meeting that he intended to call as not a thanksgiving service but a blame-giving service.

Upon this the magistrate based his finding that the address being for the purpose of public worship or exhortation it could not be delivered in the streets without a license.

I cannot hold that what was said was in any way an act of public worship, for the definition of worship is:

" (1) Courtesy or reverence paid to merit or worth; hence civil deference, honor, respect. (5) Act of paying divine honors to a deity; religious reverence and homage; adoration or reverence paid to God; a being viewed as God, or something held as sacred from a reputed connection with God. To pay divine honors to; to reverence with supreme respect and veneration; to perform religious exercises in honor of; to adore; venerate." (Webster New International Dict.)

" Honor and homage rendered to God." (Bouvier Law Dict., Rawle' Revision.)

" The act of paying honor to the Supreme Being; religious reverence or homage; adoration paid to God or a Being viewed as God; * * * prayer is a chief part of religious worship." (Words and Phrases, First Series.)

Nor can I find that the appellant exhorted to public worship within the meaning of the ordinance. The definition of " exhortation " according to Funk & Wagnalls new Standard Dictionary is as follows: "(1) The act or practise of exhorting; attempt to arouse or incite, as by appeal, argument, or admonition. (2) That which is spoken in exhorting; admonition; earnest advice; as, an exhortation to be faithful."

" Exhort " is defined by this dictionary as follows: "(1) To incite to some good deed or course of conduct by appeal or argument; address or appeal to earnestly; urge; hence, to admonish; warn; advise; as, to exhort men to arms. ' In his capacity of prophet he made no distinction. All alike he exhorted to repentance.' (2) To deliver or practise exhortation; strive to incite some person or persons by exhortation."

These definitions are very broad, so broad in fact that any political speech might easily be held to be prohibited by this ordinance. This of course was not the purpose of the legislative body that enacted this ordinance, but rather its purpose was that all public worship conducted in the streets, parks or other public places should be confined to religious services held under a license by some responsible delegate of a properly constituted church or a licensed missionary society. The appellant was not promoting public worship or exhorting thereto; in fact he was doing just the opposite. He was protesting against worship, asserting that there was no God, and he also called attention to another meeting to be held on Thanksgiving Day when this subject would be further discussed in a blamegiving service.

Although the constitutional guaranty of free speech or assembly does not prevent the government from regulating the use of places wholly within its control, and a statute or ordinance which forbids

the delivery of addresses in the public parks or on the streets constitutes a valid exercise of the police power ( *United States* v. *Newton*, 20 D. C. 226; *Commonwealth* v. *Stearn*, 25 Penn. Dist. 861; *Commonwealth* v. *Davis*, 162 Mass. 510; 39 N. E. 113; *Fitts* v. *Atlanta*, 121 Ga. 567; 49 S. E. 793; *Commonwealth* v. *Abrahams*, 156 Mass. 57; 30 N. E. 79; 12 C. J. 954), still we should not forget that both the State and Federal Constitutions guarantee the right of free speech and freedom of religious opinions in these words: " Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press." (State Const. art. 1, § 8.)

" Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." (U. S. Const. First Amend.)

I vote that the judgment be reversed on the law; facts examined and no errors found therein, complaint dismissed and defendant discharged.