**AUBURN ALLIANCE FOR PEACE AND JUSTICE, an unincorporated association; et al., Plaintiffs,**

v.

**James MARTIN, etc.; et al., Defendants.**

**Civ. A. No. 87–H–431–E.**

United States District Court, M.D. Alabama, E.D.

Jan. 11, 1988.

Peter H. Martin, Auburn, Ala., Rick Harris, Moore, Kendrick, Glassroth, Harris & White, Montgomery, Ala., for plaintiffs.

T.W. Thagard, Jr., Balch & Bingham, Montgomery, Ala., and Thomas D. Samford, III, Opelika, Ala., for all defendants.

### MEMORANDUM OPINION

HOBBS, Chief Judge.

Plaintiffs are Auburn Alliance for Peace and Justice, an association of students and faculty members at Auburn University, and individual students at Auburn University. They seek this Court's judgment that the action of Auburn University officials in forbidding them to hold a twenty-four-hour daily camp-out for a week at Auburn's designated Public Forum denied them their rights under the First and Fourteenth Amendments of the United States Constitution. Plaintiffs seek also a judicial declaration that the regulations of Auburn Univer-

sity relating to speech and demonstrations on campus are in violation of the First and Fourteenth Amendments of the United States Constitution. Finally, plaintiffs seek to have the letters of reprimand written to them by the President of Auburn University expunged from their records. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §§ 1981, 1983.

This case is before the Court on the motions for summary judgment filed by all parties. All parties have stipulated to the submission of this cause for a final adjudication, without additional evidence, on the evidence presented at the hearing for a temporary restraining order and all documents submitted to the Court. For the reasons that follow, the Court has concluded that the Auburn University regulations as they relate to the proposed week long, twenty-four-hour camp-out by the plaintiffs and their sympathizers did not violate plaintiffs' constitutional rights. Accordingly, the relief sought by plaintiffs is due to be denied.

### FACTS

The Student and Faculty Senates at Auburn University in separate actions approved "Regulations for Speeches and Demonstrations on the Auburn University Campus." These were the controlling rules in effect at the time an officer of the Auburn Alliance for Peace and Justice wrote a letter, dated February 13, 1987, to Mr. Grant Davis, Assistant Dean of Students, seeking permission for members of the Alliance "to congregate and camp out in the Open Air forum the week of February 23 through March 1" for the purpose of showing their protest to government policy in Central America. The Auburn Regulations for Speeches and Demonstrations provide in pertinent part:

Auburn University recognizes and supports the rights of students, employees of all categories, and visitors to speak and demonstrate in a lawful manner in designated areas of the campus. In order to maintain campus safety, security, and order, and to insure the orderly

scheduling of facilities and to preclude conflicts with academic and co-curricular activities, Auburn University reserves the right to reasonably limit such activities by the following regulations regarding the time, place, and manner of such activities. These regulations shall be known as the Auburn University Speech Regulations.

A. Administration

These regulations shall be administered by the Office of Student Affairs.

B. Definitions

1. Speech, as used in this document, is the oral presentation of ideas in an open forum.

2. A demonstration shall be any process of showing individual or group cause by reasoning, by use of example, by group action, or by other forms of public explanation.

C. Time, Place and Manner Limitations for Speeches and Demonstrations

1. Interior

Demonstrations, debates and speeches may be held inside University facilities only in compliance with established procedures for the use of the facility.

2. Exterior

a. Auburn University reserves the right to require that speakers, scheduled and unscheduled, sponsored and unsponsored, University affiliated, and visitors to campus, move to the Open Air Forum or to another location to avoid unreasonable conflict with the missions of the University and to assure that the flow of vehicular and pedestrian traffic will not be impeded. The use of the Open Air Forum is scheduled by the Office of the Director of Foy Union, for use between the hours of 11:00 a.m. and 2:00 p.m.

The use of the Open Air Forum is to be scheduled in blocks of time, so as to encourage the accommodation of all users and to discourage the monopolization of the Open Air Forum by any person, agency, or organization. Demonstrations, speeches, and debates will be held only in the Open Air Forum

unless special authorization is secured through the Office of Student Affairs not less than 48 hours in advance. This authorization will require identification of the organization and agreement to abide by reasonable Auburn University regulations, and will not be unreasonably withheld.

Mr. Gary Wagner, an assistant professor at Auburn University and a member of the Alliance, testified that when the Faculty Senate was considering adoption of the Regulations, it was informed that the availability of the Open Air Forum was restricted for speeches and demonstrations to avoid noise disruptions affecting students in the dormitories which were in close proximity to the Forum. Speeches in the Forum in the past had posed a problem where there had been no restriction on the hours for such activities. The Regulations were approved by the Faculty and Student Senates during the academic year prior to the incident in suit.

By her letter of February 13, Ms. Webb stated:

I realize that our request to camp in the Forum area (other than during the authorized hours) requires an exception to the University Speech and Demonstration Regulations; however, I feel that camping out would be beneficial to both our organization and the students of Auburn University ... .

When Mr. Davis responded to the February 13 letter by declining to make an exception to the Regulations, Ms. Webb and others wrote a second letter urging reconsideration of the request and expressing the view that to deny plaintiffs use of the Forum for the proposed camp-out would violate plaintiffs' rights of freedom of speech and assembly.

The Office of Student Affairs responded to the reconsideration request by stating that an exception to the Regulations would be made by extending the hours of availability of the Forum for the camp-out from 9 A.M. to 4:30 P.M. Monday through Friday and from 11:00 A.M. to 4:30 P.M. Saturday and Sunday. The response stated furtner: "In addition, should you wish to camp out on the Auburn University campus you will be allowed to do so on the concrete area immediately in front of the Memorial Coliseum during the hours that the Open Air Forum is not available."

A map of the Auburn University campus is attached hereto as Ex. A. The map shows the location of the Open Air Forum marked "y", as well as the dormitories and classrooms in close proximity to the Open Air Forum. The map also shows Memorial Coliseum marked "x", which is located a few hundred yards from the Open Air Forum, on Roosevelt Drive. Plaintiffs objected to the Memorial Coliseum location for the overnight camp-out because in their view the Forum had more activity and the impact of their message would be greater if the Forum was used. Defendants presented testimony at the hearing that during normal classroom hours there was more foot traffic in the area of the Forum but after hours foot traffic was greater in the Coliseum area. In the evening hours the Coliseum area would have substantial vehicle traffic on Roosevelt Drive.

Defendants stated that the reasons for allowing the overnight camp-out in the area of the coliseum rather than at the Forum were: (1) the coliseum was not in close proximity to dormitories; (2) the coliseum area was lighted at night which improved security; (3) adequate bathroom facilities were available at the coliseum and were not at the Forum. There is evidence in the form of affidavits submitted by plaintiffs that bathrooms were, or easily could have been, available in classrooms near the Forum.

On February 24, 1987, the camp-out began on the Forum and continued during the nights of the 24th and the 25th. (See Stipulation of Facts.) Students and others, both in support and opposition to the views of those holding the camp-out were attracted to the site; in fact, a total of forty to sixty people, including television cameramen, reporters, and counterdemonstrators, gathered at the demonstration at approximately 9:30 p.m. on the first night of the camp-out (Affidavit of Milton Andrew

Mantler). Nobody contends that the demonstrators were loud or disruptive.

On the night of February 24, 1987, campus police asked plaintiffs to disband. After plaintiffs refused, the campus police recorded the identification of those who refused to abandon their demonstration.

The identified demonstrators received subsequently a letter asking them to appear before the University Discipline Committee on April 23, 1987 for "failure to comply with the official and proper regulation or order of a duly designated, identified authority, agent or agency." The letter also stated that the violation of the order took place at the Open Air Forum on February 25, 1987 at approximately 12:28 a.m. (The Discipline Committee is composed of three faculty members and three students.)

Because of scheduling conflicts, the meeting of the Discipline Committee was rescheduled twice prior to a meeting scheduled for May 7. At the time for the May 7 meeting, a representative for the plaintiffs notified the Committee that those summoned would not appear. One reason plaintiffs declined to appear was their understanding that the Committee would not consider whether the restriction on the use of the Forum violated rights under the First Amendment.

This suit was filed in this Court on May 12, with a motion for a temporary restraining order. After a hearing held on May 15, the motion was denied on May 18.

The Discipline Committee finally had a hearing on May 20. Thereafter, the Committee recommended a reprimand for each of the named plaintiffs, which recommendation President Martin adopted by sending a letter of reprimand to the students. No other adverse action was taken as to any person.

### Law Applicable to Demonstrations on Campus

Until relatively recent times, students who wished to make speeches or demonstrate on college or university campuses were denied the protection of the First Amendment.

In 1959, the Court of Appeals for the Second Circuit denied a student at Brooklyn College any relief for his expulsion for publishing in a campus newspaper his treatment by the college administration, which he adjudged to be wrongful and arbitrary. One of the judges who formed the majority wrote that federal courts lacked jurisdiction since education is a field reserved to the states. The other judge wrote that the student had lost no constitutional right since he was still free to say whatever he wished but he was not free to say it as a student at Brooklyn College. This judge wrote that the student was at Brooklyn College "not as a matter of right but as a matter of grace." *Steier v. New York Education Commissioner*, 271 F.2d 13, 20 (2d Cir.1959). The opinion harks back to the discredited thinking of Justice Holmes in *McAuliffe v. New Bedford*, 155 Mass. 216, 29 N.E. 517 (1892), wherein he wrote for the Massachusetts court: "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman."

The majority view in *Steier* was not an aberration from the law as it was understood at that time. Attendance at a university was viewed as a privilege, and a student was viewed as subject to expulsion for any reason with no requirement in the law that the procedures leading to such expulsion meet any standard. *Hamilton v. Regents of the University of California*, 293 U.S. 245, 261, 55 S.Ct. 197, 203, 79 L.Ed. 343 (1934); Wright, *The Constitution on the Campus*, 22 Vand.L.Rev. 1027, 1029 (1969). An example of the narrow protection courts accorded speech generally is *Commonwealth v. Davis*, 162 Mass. 510, 39 N.E. 113, *aff'd* 167 U.S. 43, 17 S.Ct. 731, 42 L.Ed. 71 (1897), where, for a majority on the Massachusetts Supreme Court, Justice Holmes wrote that no one had a right to speak on Boston Common except by permit from the mayor. He reasoned that it was "no more an infringement of the rights of a member of the public [to be denied the right to make a speech in a public park] than for the owner of a private house to

forbid it in his house." *Id.* at 47, 17 S.Ct. at 733.

Although the decision in *Steier* is less than thirty years old, its holding no longer has any vitality. Attending a state university is undoubtedly a privilege, but a student may not be deprived of that privilege because a university disagrees with the content of a student's speech. Furthermore, students may not be disciplined for speaking or demonstrating without "at least the fundamental principles of fairness by giving the accused students notice of the charges and an opportunity to be heard in their own defense." *Dixon v. Alabama State Board of Education,* 294 F.2d 150, 157 (5th Cir.1961).

Although it is now beyond successful challenge that the protections of the First Amendment and due process accompany students on to a college or university campus, it is not clear as to their application in all of the multitude of circumstances when these protections are invoked. Clearly, however, a state university may not forbid speech because it does not like the speaker or the content of his speech.[1]

### Restriction on Plaintiffs was Content Neutral

 Courts must be alert to see that regulations are not construed by administrators to forbid some speech which is unpopular or which antagonizes the administrators while allowing other speech more in harmony with the position of those in authority. In the instant case, there is no basis for concluding that the treatment of plaintiffs with respect to their request for a week long camp-out at the Public Forum was other than content neutral. The pre-existing Regulation allowed the use of the Forum without restriction for three hours each day. At the urging of plaintiffs, defendants extended the hours that plaintiffs could use the Public Forum each week day to seven and a half hours, and on weekend days to five and a half hours. Moreover,

defendants provided an alternative campus site for the hours between 4:30 p.m. and 9:00 a.m. The alternative site was not deemed as desirable by the plaintiffs as the Forum, but its availability indicated the University's willingness to try to accommodate the wishes of plaintiffs for a week long camp-out on the Auburn University campus rather than any desire to discriminate.

If this case presented a question of Auburn University applying its regulations in a discriminatory manner to ban or mute a message because of a disagreement with its content, such conduct could not meet constitutional challenge. The action of the University in the instant case was content neutral; *see Bayless v. Martine,* 430 F.2d 873 (5th Cir.1970), and did not discriminate against plaintiffs.

### Restriction on Plaintiffs was not Unreasonably Restrictive

Because a restriction on campus speech or demonstrations is content neutral, however, does not end our inquiry. Regulations are not immune from constitutional attack merely because they unreasonably restrict with an even hand all speech or all demonstrations. The rights of citizens and students to protest governmental policies is at the core of the rights sought to be protected by the First Amendment. As stated by this Court in its opinion denying plaintiffs' motion for a temporary restraining order, this Court can think of no place that should be more hospitable to the free expression of ideas than the campus of a great university. Restrictions imposed on plaintiffs' use of the Forum must be reasonable as to time, place and manner. To say, as this Court does, that plaintiffs are free to speak and express their views and to demonstrate without being disciplined or punished by the University does not mean that they may demonstrate at any time, in any manner, and at any place on a college

---

1. Although there has been some disagreement as to whether a "camp-out" invokes First Amendment protection, *see Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3068, 82 L.Ed.2d 221 (1984), and

concurring opinion of Chief Justice Burger, *Clark,* 468 U.S. at 300, 104 S.Ct. at 3072, this Court has treated the instant camp-out as expressive activity or symbolic speech which is protected by the First Amendment.

campus. *See Widmar v. Vincent,* 454 U.S. 263, 267 n. 5, 102 S.Ct. 269, 273 n. 5, 70 L.Ed.2d 440 (1981) (a university may regulate the time, place and manner of expressive activity so that it does not materially disrupt classwork, involve substantial disorder on campus, or invade the rights of others); *Shamloo v. Missippi State Board of Trustees,* 620 F.2d 516, 521–22 (5th Cir. 1980). Few would suggest that a university would be forced to allow a speech or a demonstration in the reading room of the library. Such a prohibition would be reasonable because the speaker or demonstrator would interfere with the rights of others who presumably sought the reading room for quiet and reading, not speeches.

Plaintiffs contend that to restrict their camp-out at the Public Forum to the hours allowed by defendants was an unreasonable restriction on their right to demonstrate because their demonstration was not accompanied by speeches and was not intended to be disruptive. On the other hand, defendants assert that the restriction on a week long camp-out in close proximity to the student dormitories, in an unlighted area without adequate bathroom facilities was reasonable.

Doubtless, the Student and Faculty Senates thought that use of the Forum for three hours each day would fully meet the demands on the Forum's use. A request for a week long camp-out was not contemplated by those formulating the Regulations. Nevertheless, defendants greatly extended the hours for use of the Forum and provided an alternative site for the camp-out during the hours between 4:30 p.m. and 9:00 a.m. The action of defendants in response to the request of plaintiffs meets the time, place and manner limitations which in this instance do not unreasonably impede the plaintiffs in their desire to communicate their message.

There is nothing peculiarly expressive about a camp-out to convey plaintiff's message of disagreement with the Government's policy of aid to the Contras.[2] Defendants not only have not sought to deny plaintiffs alternative avenues of expression; they have allowed plaintiffs to engage in a week long, 24–hour-a-day camp-out on the Auburn campus, but have proscribed use of the Forum for this purpose only for certain hours of the day. If plaintiffs in the name of the First Amendment can require a week long, or month long, 24–hour-a-day camp-out on the Forum, seemingly, any group seeking to so demonstrate would have the same right.

The Faculty and Student Senates viewed use of the Forum at all hours of the day and night as disruptive—primarily because of the proximity of student dormitories. As to the specific request of plaintiffs and the nature of their demonstration, it appears to the Court that defendants wisely exercised their discretion to increase the number of hours for which the Forum was available. Use of the Forum by plaintiffs beyond the prescribed hours was not, however, an absolute right, and its use by plaintiffs was properly balanced against the interests of other students on campus.

Restrictions "are valid provided that they are justified without reference to the conduct of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221. In the opinion of this Court, defendants' actions in this case meet the *Clark* test.

*Speech Regulations are not Invalid Due to Vagueness or Overbreadth*

■ Plaintiffs assert that the Speech Regulations are ambiguous and are therefore void for vagueness and overbreadth. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). The

---

2. In *Clark v. Community for Creative Non–Violence, supra,* plaintiffs argued that a camp-out was specially expressive in order to communicate the plight of the homeless, but the Supreme Court noted that there was no barrier to delivering the message by other means. *Clark,* 468 U.S. at 295, 104 S.Ct. at 3069.

Court finds that the Speech Regulations are not ambiguous, and a reasonable person could ascertain from the face of the Regulations the requirements of the University as to speeches and demonstrations on campus.

The Court finds that the Speech Regulations require unambiguously that prior authorization is necessary forty-eight hours in advance of any speech or demonstration held anywhere on campus, except the Open Air Forum. The Regulations grant persons an absolute right to speak or demonstrate in the Open Air Forum between the hours of 11:00 a.m. and 2:00 p.m. on the condition that they notify the University in advance to avoid scheduling conflicts. In addition, the Speech Regulations grant the Office of Student Affairs the discretion to move speeches or demonstrations "to the Open Air Forum or to another location to avoid unreasonable conflict with the missions of the University and to assure that the flow of vehicular and pedestrian traffic will not be impeded." The Regulations provide further that special authorization for demonstrations or speeches in other area of the campus "will not be unreasonably withheld."

Of course, these Regulations have not been interpreted to require prior authorization for the everyday speech between students and others on the Auburn University campus. Nor, have these Regulations been interpreted to require prior authorization before wearing buttons with a candidate's name or T-shirts with a slogan. A contrary interpretation would require a real leap of logic and would contradict the prior construction of the Regulations by the University. The speech and demonstrations which the Speech Regulations were intended to regulate are those a reasonable person might find disruptive, or might find to interfere with normal activities on the campus.

The Speech Regulations grant the Office of Student Affairs the power to regulate speeches and demonstrations which would interfere with "campus safety, security and order ...," and for the purpose of securing "the orderly scheduling of facilities and to preclude conflicts with academic and co-curricular activities." The University can not prevent speeches and demonstrations unless the requested speech or demonstration would unduly interfere with the criteria listed in the regulation, and such authorization "will not be unreasonably withheld."

Although "the missions of the University" is a broad criterion, the evidence before the Court indicates that the University has interpreted this criterion to limit speeches and demonstrations which disrupt classes, dormitory life, campus security, and the other criteria listed in the Speech Regulations. In fact, this interpretation is consistent with the actions of the Office of Student Affairs in regulating the demonstration at issue. If there is disagreement with an interpretation of the Regulations, persons may appeal to the Dean of Students and the President of the University.

## CONCLUSION

This is not a case where the University officials have denied speakers or demonstrators an opportunity to speak or demonstrate. This is not a case where University officials have denied a speaker or a demonstrator an opportunity to give expression to his message by unreasonably determining that the requested activity would interfere with the mission of the University. One may argue that a week long, 24-hour-a-day camp-out by numerous students and others in close proximity to dormitories would not unreasonably interfere with students studying or sleeping in the dormitories, but a contrary decision by defendants was certainly a reasonable one and does not manifest any desire to be unreasonably restrictive of speech or demonstrations. "Therefore, so long as the administration protects freedom of expression without substantial impairment, it must be afforded the flexibility to issue ad hoc directions specifying the time, place and manner in which particular activities are to be held ..." *Bayless v. Martine*, 430 F.2d 873, 882 (5th Cir. 1970), concurring opinion of Thornberry, J. The Amendment has not been violated by defendants in this case.

A separate judgment will be entered in conformity with this memorandum opinion.

## JUDGMENT

In accordance with the attached memorandum opinion, it is the ORDER, JUDGMENT and DECREE of this Court that:

1. Pursuant to 28 U.S.C. § 2201(a), the "Regulations for Speeches and Demonstrations on the Auburn University Campus" are declared not to violate the First and Fourteenth Amendments of the United States Constitution;

2. Pursuant to 28 U.S.C. § 2201(a), the action of the officials of Auburn University in forbidding the Auburn Alliance from holding a twenty-four hour daily camp-out for a week at Auburn's designated Public Forum did not deny plaintiffs their rights under the First and Fourteenth Amendments of the United States Constitution;

3. The Court refuses to order Auburn University officials to expunge any previous evidence of disciplinary action taken against plaintiffs; and

Court costs are taxed against Auburn Alliance and the individually named plaintiffs.

## APPENDIX

Auburn University Campus

©Auburn University, September 1985